KEOGH *et al. v.* MINRATH *et al.*

(*Supreme Court, General Term, First Department.* February 14, 1890.)

PARTNERSHIP—WHAT CONSTITUTES—SHARE OF PROFITS.

M. agreed to make such advances as he might approve to the firm of B. & Z., to enable them to carry out a building enterprise, and to accept as compensation a certain percentage of the profits. Title to the property was taken in the names of B. & Z., and the contracts for the building were made in their names. M. had no voice in the management of the business, and was not to render his personal services as

a principal therein. *Held*, that he was not liable, as a partner with B. & Z., for building materials furnished to them, though they were supplied at a time when the legal title had been temporarily placed in his name to prevent complication in case of the then expected death of B.

Motion for new trial on exceptions.

An action by Christopher B. Keogh and another against Ferdinand R. Minrath and Lorenz Zeller. The court dismissed the complaint, and plaintiffs move for new trial on exceptions ordered to be heard at general term in the first instance.

Argued before VAN BRUNT, P. J., and BARTLETT and BARRETT, JJ.

*E. J. Meyers*, for plaintiffs.    *F. R. Minrath, pro se*.

VAN BRUNT, P. J. This action was brought against the defendants, as copartners, to recover for building materials furnished and supplied by the plaintiffs. The defendant Zeller made default in pleading, and the defendant Minrath interposed a general denial. The firm of Benner & Zeller, consisting of George H. Benner, a real-estate broker, now deceased, and Lorenz Zeller, had been engaged in business as copartners, and had had divers business transactions with the defendant Minrath prior to the one brought in question in this action. In the spring of 1886, Mr. Zeller, Mr. Benner, and Mr. Minrath had certain conversations about the purchase of two houses on Second avenue, between Fourth and Fifth streets, and Minrath was asked how much he would advance towards the purchase. He replied that he could get his aunt, Mrs. Eimer, to advance some $4,000 or $5,000, and that he had some money; and thereupon they stated to him how much money they would contribute, namely, $3,000. Minrath asked how much profit he would be entitled to eventually if he contributed a certain amount, and how much he would be likely to be required to pay in case the lots were built upon; and Benner told him he thought $8,000 or $9,000, and that he would allow him 10 per cent. of the profits. The houses were bought for $33,500. A first mortgage was obtained, of $24,000. Mrs. Eimer advanced $4,500, for which they gave her a mortgage; and Minrath, for searching fees, disbursements, etc., took a mortgage for $2,300, and the balance of the purchase money was advanced in cash by Benner & Zeller. Benner & Zeller made a contract for the erection of two five-story flats upon these premises. As they went on, Minrath advanced, from time to time, money, until the summer of 1886, when Zeller told Minrath that he could not possibly carry on the business unless he got other moneys; and Mr. Minrath finally said he would advance more money, but he wanted a greater percentage of the profits, which was allowed. Zeller states that he thinks Minrath asked him how much more he wanted, and that he gave him a general outline, and that before the permanent loan was secured he must have further money, and would allow him 20 or 22 per cent. The title to the property was taken in the names of Benner & Zeller, and the contracts for the buildings were made in their names. On the 6th of April, 1886, Benner & Zeller gave to Minrath the following writing: "In consideration of his procuring mortgages on 71 and 73 Second Ave., and enabling us to close the purchase of said property, we agree to pay to Ferdinand R. Minrath a sum equivalent to 5 per cent. of the net profits realized by us on said purchase, and the buildings to be erected thereon." Minrath was consulted as to the character of the building, and he also saw the plans of the building. The architect testified that he met him three or four different times in the office of Benner & Zeller, and that he saw him at the building. In October, Minrath procured a large mortgage of $44,000, the proceeds of which were used in paying off the existing mortgages and liens on the property; and a part, the balance, was paid over to Benner & Zeller for the purpose of satisfying material-men. Minrath kept a large portion of this money for the purpose of the payment of his own claims. Minrath was accustomed to advance

the moneys for the purpose of paying the men working upon the buildings, and for the materials supplied to the buildings. On the 30th of October the property was transferred by Benner & Zeller to Minrath. This appears, however, to have been done because Benner was very sick, and was in such a condition that he could not leave the house, and the title was placed in Minrath's name so that no complications might arise in case of Benner's death. The purpose was not to tie up the sale of the property. This title was in Minrath's name until February, 1887, and during this time the plaintiff furnished the materials sued for in this action. At the time of the transfer, in October, there were $57,800 of mortgages on the buildings,—one of $44,000; one of $9,300, held by Minrath; and one of $4,500, held by Mrs. Eimer, the aunt of Minrath. After these advances had been made, Zeller asked Minrath to transfer the property to his (Zeller's) sister, which he complied with; and his sister gave Minrath a mortgage for the moneys which were due him, subject to the $44,000 mortgage. The mortgage was dated the 21st of February, 1887, and was for $20,700, which covered more than the advances. Upon these facts it was claimed by the plaintiffs that Minrath became a joint owner with Benner & Zeller in this enterprise, and consequently was liable to them for the balance due to them for the materials furnished to these buildings. Upon the trial the court dismissed the complaint, to which an exception was taken. This exception is now brought up on this motion for a new trial.

The plaintiffs claim that the defendant Minrath is shown to be a partner because of the contribution of capital as such in the joint adventure, and participation in and division of profits as such, as distinguished from compensation for money loaned, and that Minrath was by Benner & Zeller appointed their joint agent, and was thereby authorized to enter into and make contracts in furtherance of the common object, which, coupled with a division of the profits, made him a partner; that active participation in and direction of the affairs of the adventure, authorization of obligations, and payment thereof, by one party, who was to receive a share of the profits as such, and the holding and owning of the legal title, and directing the employment and purchase of materials to carry out the adventure so as to make profits for division, made him a partner. If the evidence bore out these claims, undoubtedly Minrath was a partner. But there are certain elements which are wanting, and which bring this case within the principles laid down in those cases in which, where a party advances money, or incurs obligations, or performs services in behalf of the firm, and is to receive as compensation therefor a percentage of the profits, he is not necessarily a partner. In such cases there is no ownership in the results of the common enterprise; there is only an obligation upon the part of the firm to pay as a debt the compensation agreed upon for the money loaned, or the services rendered. In the case at bar it is claimed that the advances made by Minrath were a contribution of capital as such to the joint adventure, and that he participated. It is undoubtedly true that Minrath made advances for the purpose of aiding Benner & Zeller in the carrying out of their building enterprise. But this is by no means to be considered as a contribution of capital in a joint enterprise. Benner & Zeller were to have the use of his money, and they were to pay him a certain percentage of the profits as a compensation therefor; and that is all that was done between Benner & Zeller and Minrath in respect to these advances. He had no interest or ownership whatever in the capital of the enterprise. This brings the case directly within the rules laid down in Cassidy v. Hall, 97 N. Y. 159, where the defendants were to advance moneys to the firm in which they were alleged to be partners, were to fill its orders, or, in other words, manufacture its goods for it, collect its bills, and then retain 10 per cent., in addition to interest, for all the money which they advanced. The case at bar is precisely analogous in these respects to the case cited.

It is further urged upon the part of the plaintiffs that Minrath became a

partner because he was the agent of Benner & Zeller, authorized to make contracts in furtherance of their common object, which, coupled with the interest in the profits, would create a partnership.    We have searched the record in vain to find any evidence to support this proposition.    Neither has any evidence to this effect been pointed out to us upon the points of the appellants. There is no evidence whatever that Minrath employed anybody, that he had any authority to make contracts, or that he was the agent of Benner & Zeller for any purpose whatever.    Benner & Zeller employed the architect, made the contracts in their own names, and carried on the business in their own names. Minrath, it is true, made inquiries, and examined the work, from time to time, to see how it was progressing, and saw the plans before they were adopted.    But this is entirely consistent with the idea that he was only looking after the security he was to receive for the advances he was to make. There was no active participation in or direction of the affairs of the adventure.    Neither was there any authorization of obligations or payments as such by Minrath on behalf of the adventure.    He advanced money to pay for materials, and the pay of workmen, it is true; but that in no respect made him a partner, any more than did the manufacturing of the goods, and receiving pay therefor, in the case of *Cassidy* v. *Hall, supra.*

It is also claimed that the holding of the legal title by Minrath made him a partner.    It is clear, from the evidence, that the sole purpose was to prevent complications in case of the death of Benner.    He was sick.    If he had died, it would have been impossible to have carried out this enterprise with the title in his name, and as a consequence it was transferred temporarily to Minrath, in order that in case of death the enterprise might be carried on without the complications which would necessarily arise from the intervention of the heirs of Benner as part owners of this property; and when Minrath was asked to transfer the property to the sister of Zeller it was done, mortgages being given back to secure him for the advances and compensation to which he was entitled.    Although the materials sued for happen to have been furnished during the period Minrath held the title, there is no evidence that the plaintiffs knew this fact, or that they extended any credits on account thereof.

We have examined with care the facts set out in this case, and those appearing in the case of *Cassidy* v. *Hall;* and we can find no principle which, in view of the exposition of the law as contained in that case, would make Minrath a partner, and liable for the debts of this enterprise.    The court say that it is well settled that when a party is only interested in the profits of a business as a means of compensation for services rendered, or for money advanced, he is not a partner; and attention is called to the case of *Richardson* v. *Hughitt,* 76 N. Y. 55, in which it was held that a person who has no interest in the business of a firm, or in the capital invested, save that he is to receive a share of the profits as compensation for services, or for money loaned, for the benefit of the business, is not a partner, and cannot be held as such by a creditor of the firm.    In that case, advances were to be made upon personal property to be manufactured and delivered, for which, when sold, the defendant was to receive one-fourth of the profits, and his advances, with interest at 5½ per cent.    It seems to us that we may well say of *Cassidy* v. *Hall,* as was there said of the cases under discussion, that it is "conclusive upon the question considered, and none of the decisions in this state are adverse to the doctrine which is therein laid down.    We do not deem it necessary, in view of the fact that the law upon the question discussed is well settled in this court, to examine the English authorities bearing upon this subject."    But it is urged that this case does not apply, because in that case no advance by way of loan could be called for unless the defendants approved of the order, so that they were the sole judges of the extent to which they could be called upon to advance moneys, and that the court of appeals held that this was the controlling element of the case, as well as in the case of

*Curry* v. *Fowler*, 87 N. Y. 33, and it is said that in the case at bar there was no such limitation.

We have examined this case in vain to find anything which required Minrath to advance any moneys beyond that which his own judgment approved. In *Cassidy* v. *Hall* the agreement was to advance moneys upon orders approved,—no amount fixed. In the case of Minrath, he was under no obligation to make any advances unless he approved of the same. It is true that the counsel for the plaintiffs claims that at the last interview, when the former arrangements were abandoned, Minrath was called upon, and agreed to advance all money to pay for labor and materials to complete the undertaking, and that, without any limitation of amount, he assented, upon being promised an increased profit. But the case contains no such evidence. There is no evidence that he agreed to advance all moneys to pay for labor and materials to complete the undertaking. The evidence to which reference is made is as follows: "I urged upon Mr. Minrath the need of some more money, and Mr. Minrath said he was very short, and could hardly give me any more money, and I urged upon him the necessity of paying the men, and paying for materials, and finally he concluded to give further moneys; and I don't know whether I stated to him that I would give him, or he asked me, an increase, but I know I allowed him an increase of profit again. At the interview there was no particular amount stated that Mr. Minrath was to contribute or advance." In view of this testimony, it is difficult to see how it can be claimed that Minrath agreed to advance all moneys to pay for laborers and materials to complete the building. Upon the contrary, it was entirely optional with him whether he would advance $1,000 or $5,000; and it was only such advances as he might approve that he was called upon to make, precisely as in *Cassidy* v. *Hall*, above cited.

Our attention is called to the case of *Hackett* v. *Stanley*, 22 N. E. Rep. 745, (decided in the court of appeals in October, 1889,) where a party was held to become a partner, and, it is claimed, under circumstances similar to those in the case at bar. An examination of that case shows that the decision turned upon the fact that it was clearly to be implied from the contract that the alleged partner should render active service as a principal in the prosecution of the business, and furnish further financial aid therefor, if it became necessary, and he deemed it advisable to do so. By the contract, the right to share in the profits would not cease upon the payment of the original loan, and did not depend upon the value of the services rendered, or money advanced, or either of them, alone, but was to continue as long as the business was carried on. It further appeared from the terms of the contract that each party should bear any loss incurred in proportion to the advances made by them, respectively. With these features in the contract, the court held that a partnership existed between these parties. The business referred to in that case was a continuing business, and the parties were to divide the yearly net profits of the business, and such arrangement was to continue until the termination of the business itself. These features are entirely distinct from those which appear in the case at bar. Mr. Minrath was to advance the money to enable Benner & Zeller to carry out their enterprise, and he was to get, as a compensation for his services in procuring certain loans by which they hoped to carry the business to a successful termination, a certain share of the profits. As already stated, he had no voice in the management of the business. He was not to render his personal services as a principal in the enterprise. Neither did he have any supervision over the conduct of the business, as in the case of *Hackett* v. *Stanley*. We are of opinion, therefore, that the case cited in no way either limits or extends any principle established in *Cassidy* v. *Hall*, and that the defendant Minrath cannot be held as a partner. The exceptions should be overruled, and judgment ordered, upon the dismissal of the complaint, for the defendant, with costs. All concur.