### FIRST NAT. BANK OF JERSEY CITY *v.* STAPLES *et al.*

(*Supreme Court, General Term, Fourth Department.* November 20, 1890.)

PARTNERSHIP—WHAT CONSTITUTES—EVIDENCE.

A firm engaged in raising peas and beans, which it let out to farmers, borrowed money of defendants to pay its debts, and agreed in writing to give its notes for the amount, without interest, to be collaterally secured by a transfer of its leases with the farmers, and also by certain mortgages giving defendants the right to the possession of the property mortgaged until the loan was paid. The agreement further provided that the firm was to act as agent, of defendants in receiving crops under its contracts, and in converting the same into money; and that, as compensation for such services as they might render, and for the use of their money, defendants should receive one-third of the gross profits of the firm. *Held,* that defendants did not acquire any such proprietary interest in the firm's business as to make them liable as partners for the debts of the firm.

Appeal from Jefferson county.

This action was brought by the First National Bank of Jersey City against Orren G. Staples and John F. Walton, to recover upon three promissory notes made by the firm of Howard & Underhill. The claim of the plaintiff, who appeals, was that respondents were copartners with James H. Howard and Clayton E. Underhill, and were members of the firm of Howard & Underhill. This was denied. On the trial the notes mentioned in the complaint were produced by plaintiff, and their execution by the firm of Howard & Underhill was proven. The signatures to them were in the handwriting of James H. Howard. They were received in evidence. The plaintiff then introduced the following agreement:

"This agreement made this 25th day of May, 1889, between James H. Howard and Clayton E. Underhill, composing the firm of Howard & Underhill, of Cape Vincent, N. Y., parties of the first part, and Orren G. Staples, of Washington, D. C., and John F. Walton, of Alexandria Bay, N. Y., parties of the second part. The said Howard &· Underhill are engaged in the growing of peas and beans at Cape Vincent, N. Y., and have let out to divers farmers peas and beans to be grown for them during the present year under written

contracts, a list of which contracts are hereto annexed, forming a part of this agreement, all of which contracts belong to said Howard & Underhill and represent the peas and beans and bags therein mentioned, and the crop to be raised from said peas and beans under the terms stated in said contracts to which reference is had. And said Howard & Underhill are in immediate want of money to pay existing debts, and to pay said farmers for said crop when delivered during the autumn of 1889, and have applied to said Staples and Walton for the loan of money for that purpose. It is therefore agreed that said Staples and Walton will loan to said Howard & Underhill the sum of twenty-five thousand dollars ($25,000) as follows: $5,000 on the 4th day of June, 1889; $5,000 on the 11th day of June, 1889; $5,000 on the 1st day of August, 1889; $5,000 on the 15th day of August, 1889; and $5,000 on the first day of September, 1889,—for which said Howard & Underhill are to give their notes without interest on receiving the above sums at the above dates, and payable on demand. And, as collateral thereto, and security for the payment of said loans, the said Howard & Underhill do hereby sell, assign, transfer, and set over to said Staples and Walton all of the said contracts mentioned in said Schedule A annexed, and all the grain therein mentioned, and the crops to be grown under said contracts, and the bags and other personal property mentioned in said contracts, and all their right, title, and interest in and to said contracts, and authorize said Staples and Walton to take possession under said contracts and enforce the same. And said Howard & Underhill covenant and agree that any assistance or labor they shall perform in receiving said grain under said contracts shall be as agents of said Staples and Walton, and not otherwise, and any money received from the sale of said crops, when raised by them, shall be the money of said Staples and Walton. And it is further agreed that, whereas said Howard & Underhill are now erecting a seed-house in the town of Cape Vincent, as soon as the same is completed, which will be on or before the 1st day of August, 1889, they will give a mortgage upon said property, which shall be the first lien thereon to said Staples and Walton as a further collateral security to this loan, and said Staples and Walton may at any time take possession of said seed-house, and occupy the same until this loan is paid; and, as a further security said Howard & Underhill agree to give said Staples and Walton a chattel mortgage covering 560 odd bushels of peas and beans now in the barn of Harvey Howard, at Cape Vincent, aforesaid. It is further agreed that any money received from the sale of the peas and beans now on hand, or those that shall be received under said contracts, shall belong to said Staples and Walton, and the said Howard & Underhill agree to pay the same over to them as fast as received, less the necessary expenses of preparing said grain for market at the seed-house in Cape Vincent, aforesaid, which is estimated at about 15 cents per bushel. It is further agreed that said Staples and Walton shall receive, in lieu of interest on said loan, and for the services that they may render in and about the said business, one-third of the gross profits made in the raising and marketing the said peas and beans under said contracts, intending by this to give them one-third of all the gross profits on all business done at said seed-house during the season of 1889. It is further agreed that upon said Staples and Walton receiving payment of the said $25,000 and one-third of the profits, as aforesaid, they will reassign and transfer to said Howard & Underhill all the property assigned them under this agreement, or as security for said loan, and remaining undisposed of, and not appropriated to the payment of said loan as aforesaid. This contract shall not be construed as requiring either said Staples or Walton to give any personal attention to said business, and in case they see fit to put any man in possession of said seed-house or business as their agent, the same is to be paid by the firm of Howard & Underhill without expense to them. It is understood, however, that it is the intention of the parties that Howard & Underhill shall convert said

seeds into money as the agents of said Staples and Walton, provided the same is done in a satisfactory manner to said Staples and Walton. It is further understood that said Howard & Underhill have contracts for the sale of peas and beans during the winter of 1889-90; that they shall give the benefit of said contracts to said Staples and Walton, and shall, with the approval of said Staples and Walton, fill said contracts from the grain and seeds thereby assigned to them. The property now on hand, and the crop to be grown, shall be insured in the name of said Staples and Walton as their interests shall appear under this contract. In witness whereof the parties hereto have set their hands and seals the day and year first above written in duplicate.

"JAMES H. HOWARD.
"CLAYTON E. UNDERHILL.
"STAPLES & WALTON."

It was admitted that subsequent to the making of the agreement, the parties thereto entered upon its performance, and that the business theretofore carried on by Howard & Underhill, and referred to in the agreement, was thereafter transacted in the firm name of Howard & Underhill, as it previously had been. No other evidence was given on the trial. When the plaintiff rested, the respondents moved for a nonsuit on the grounds: "(1) The plaintiff has failed to prove a cause of action against said Staples and Walton; (2) the agreement in evidence dated May 25, 1889, did not constitute Staples and Walton members of the firm of Howard & Underhill, as between themselves or as to third parties; (3) the notes do not purport to be made by any firm of which Staples and Walton were members; (4) no proof that the notes were for the benefit of any firm of which Staples and Walton were members or in any way assumed the same or became liable thereon." The motion was granted, and the plaintiff excepted.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

D. G. Griffin, for appellant. John C. McCartin, for respondents.

MARTIN, J. It seems to be settled in this state that persons who have a proprietary interest in a business and in its profits are liable to creditors as partners. Magovern v. Robertson, 116 N. Y. 61, 22 N. E. Rep. 398; Hackett v. Stanley, 115 N. Y. 625, 22 N. E. Rep. 745. It seems to be equally well settled that a person who has no interest in the business of a firm, or in the capital invested, save that he is to receive a share of the profits as compensation for services or money loaned, for the benefit of the business, is not a partner, and cannot be held liable as such by a creditor of the firm. Richardson v. Hughitt, 76 N. Y. 55; Eager v. Crawford, Id. 97; Burnett v. Snyder, Id. 344, 81 N. Y. 550; Curry v. Fowler, 87 N. Y. 33; Cassidy v. Hall, 97 N. Y. 159; Keogh v. Minrath, 8 N. Y. Supp. 816. The important question presented by this appeal is whether the respondents under the agreement between themselves and Howard & Underhill acquired a proprietary interest in the business of that firm, and its profits, so as to make them liable as partners for the debts contracted by it. The appellant contends that the agreement between the firm of Howard & Underhill and the respondents contains all the elements necessary to constitute a copartnership, and to render the respondents liable, as copartners, to third persons dealing with that firm. It claims that this agreement discloses (1) that there was a loan of money by the respondents to be used in the business of the firm to which it was made; (2) that the respondents reserved to themselves a right to participate in the management of the firm business; and (3) that the respondents possessed an ownership of a share of the profits of all the business of the firm. We do not think this contention can be sustained. An examination of the agreement between the parties shows that the respondents agreed to loan to the firm of Howard & Underhill $25,000. The purpose of this loan, as indicated in the agreement, was to obtain money with which to pay the debts of the firm of

Howard & Underhill, as well those that were due as those that were to become due. We find no provision in the agreement that this money should be used in any business in which the respondents were to become interested. The respondents were given no power or control as to its application or disposition. It was a loan to that firm, and it could dispose of the money as it saw fit. We fail to find any provision in this agreement which gave the respondents any right to participate in the management of the general business of the firm of Howard & Underhill. The firm of Howard & Underhill, as security for the payment of the money loaned them, were to give the respondents their notes. As collateral security for the payment of that debt they also transferred to the respondents certain specified property, with the right of possession, and the right to sell the same, and thus procure the money to satisfy their debt. They also agreed to give the respondents certain mortgages as further security, with the right to the possession of the property mortgaged, and to retain such possession with the use thereof until the loan was paid. The respondents were authorized to perform no services, and had no interest in the general business of the firm of Howard & Underhill. The only services the respondents were authorized to perform, and the only interest they had in the management of any business was under and by virtue of the transfer to them of the property of Howard & Underhill. The services which might be performed by the respondents related to the property transferred to them as security, and to the collection of their debt. That business was their business, and was wholly independent of the general business of the firm of Howard & Underhill. Nor do we think the respondents possessed any ownership in the profits of the business of the firm of Howard & Underhill. The loan was without interest. Services might have to be performed by the respondents in collecting their debt, and looking after the property transferred to them as security therefor. As a measure of the compensation to be paid for such services, as they might have to render and for the use of the money loaned, the respondents were to receive the proportion of the profits named. They acquired no interest in these profits as such, but they were only interested therein as a means of compensation for the use of their money, and their trouble in converting the property transferred into money to pay their loan. The agreement between these parties shows that its purposes were threefold: (1) To provide for a loan of money by the respondents to the firm of Howard & Underhill; (2) to provide security for its repayment and a special method of enforcing such security; (3) to establish the measure of the compensation to be received by the respondents for the use of the money loaned by them, and for any services they might perform in enforcing their security and collecting their debt. We do not think the respondents by this agreement acquired any such proprietary interest in the business of the firm of Howard & Underhill, or in its profits as to make them liable as partners for the debts of that firm. Moreover, there is no evidence in this case to show that the notes upon which the appellant sought to recover in this action were given by Howard & Underhill in any business in which the respondents had any interest whatever. We think the court properly nonsuited the plaintiff, and that the judgment appealed from should be affirmed. Judgment affirmed, with costs. All concur.