## The Salt Springs Bank *vs.* The Syracuse Savings Institution.

The acceptance, whether general, or for honor, or *supra* protest, after sight, of a bill of exchange, admits the genuineness of the signature of the drawer, and consequently, in favor of a *bona fide* holder for value without notice, if the signature of the drawer turns out to be a forgery, the acceptance will nevertheless be binding, and entitle such holder to recover thereon according to its tenor.

If the drawee of a forged bill has paid it, he cannot recover back the money, although the forgery is conclusively established. Having by that act admitted its genuineness, he will not be permitted to dispute, it, afterwards, although he can have no recourse against the drawer, for reimbursement.

Thus, where a forged check upon the plaintiff's bank was received by the defendant in the course of its business, in good faith, it having paid the full amount named therein, without notice of the forgery, and the plaintiff, on presentment of such check, by the defendant, received and paid it; *Held* that these facts brought the case within the above rules; and that the plaintiff could not recover back from the defendant the sum paid upon the check.

*Held, also,* that the fact that the forged check had upon its face the forged signature of the plaintiff's teller, which was overlooked, at the time of presentment, together with the facts that the pretended drawer was not even a customer of the bank, and had no account there out of which the check could be paid, demonstrated what would otherwise have been matter of inference merely, viz. that the plaintiff's agents were guilty of very great neglect.

A check on a bank is, in substance, a bill of exchange payable on demand, and is governed by the same rules which are applicable to those securities.

The officers of a bank are bound to know whether the pretended drawer of a check is or is not a customer of the bank; and whether his account will justify the payment of the check.

ON Saturday, the 12th of April, 1862, about 7 P. M., a stranger went into the defendant's office, then open according to its usual custom, and presented a check upon the plaintiff's bank, for $300, dated that day, purporting to be drawn by A. Crippen, and payable to one Hart or bearer. Across the face of the check was written the name of "Truesdell." John Truesdell was then the plaintiff's teller, and was in the habit of certifying checks by writing the name "Truesdell" across the face. The signature of the drawer and the name Truesdell across the face were both forgeries. A person by the name of Alonzo Crip-

pen resides in the city of Syracuse, some mile and one half from the plaintiff's bank, who usually signed his name A. Crippen. The defendant's clerk paid to the person presenting the check the amount thereof, in good faith, without inquiry, supposing it to be genuine. On the following Monday morning the defendant caused said check to be presented to the plaintiff for payment, and the same was paid by the discount clerk, in good faith, believing the check, and the name across the face, to be genuine. The teller was not in the bank when the payment was made. The payment of the check was entered on the journal, on Monday, and nothing further was done, in reference to the check, that day. On the next, about the time of opening the bank, the forgery was discovered. Crippen, the supposed drawer of the check, had no funds in the bank, and was not one of its customers or depositors. The cashier of the plaintiff called on Crippen, as soon as the forgery was discovered, with the check, and he pronounced it a forgery. On the same day, and very soon thereafter, the defendant was notified that the check was a forgery, and a demand made for repayment of the money, which was refused. The person who presented the check to the defendant and got the money, had not since been heard of.

A case containing the above facts was made by the parties, pursuant to section 372 of the Code, and presented to the court for decision.

*B. D. Noxon*, for the plaintiff.

I. The Salt Springs Bank, having by mistake, paid the check, and as soon as the mistake was discovered, having notified the savings bank, are entitled to recover back the money. 1. There can be no question had the notice been given on the same day that the Salt Springs Bank paid it, that the plaintiff would be entitled to recover. 2. The notice having been given on Tuesday morning, raises the question of time, in which notice should be

given. The rule seems to be, upon the payment of a forged check, notice should be given within such time as to give the holder the same advantage of proceeding against the party from whom he received the check, as if it had been declined. (*Wilkinson* v. *Johnson*, 3 *Barn. & Cress.* 428.) In case of dishonor, the notice is in time, if served on the same or the next day. (*Story on Promissory Notes,* § 320.)

II. The savings bank suffered no loss by reason of notice not reaching them on Monday. It is conceded that the person to whom they paid the money was a stranger, unknown to the bank, and that he has not since been heard of, and no loss has been sustained by the savings bank by reason of delay.

III. The rule requiring the drawee to satisfy himself of the genuineness of the bill before he pays, only applies to cases where the drawer is a customer, depositor, or correspondent of the bank. In such cases it has been held, he pays at his peril. Such was the case of *Goddard* v. *The Merchants' Bank*, (4 *Comst.* 149.)

IV. The name "Truesdell," forged upon the face of the check, importing that the teller had certified it, was a circumstance tending to create the mistake of payment by the discount clerk in the plaintiff's bank. It may be claimed by the defendants that they paid the check on the faith of the genuineness of the teller's name, and that the plaintiffs were bound to know his signature before paying. The rule holding the drawee as bound with knowledge of the drawer's handwriting does not apply to other names upon the bill. (*Smith* v. *Chester*, 1 *T. R.* 654. *Goddard* v. *Merchants' Bank*, 4 *Comst.* 149. *Wilkinson* v. *Johnson*, 3 *Barn. & Cress.* 428. *Cocks* v. *Masterman*, 9 *id.* 902. *Canal Bank* v. *Bank of Albany*, 1 *Hill*, 287. *Bank of Commerce* v. *Union Bank*, 3 *Comst.* 237. *Ellis* v. *Ohio Life Ins. and Trust Co.*, 4 *Ohio*, 628. *Story on Prom. Notes,*

320.   *Merchants' Bank* v. *McIntyre*, 2 *Sandf.* 431.   2 *Denio*, 108.   3 *Hill*, 560.   3 *Comst.* 230.)

*George F. Comstock*, for the defendant.

The defendant's institution having received the check in good faith, and paid the money on it; and the plaintiff's bank having paid the check, and kept it one whole day, the money cannot be recovered back.   (16 *N. Y.* 124.) The proposition is a general one, but it is strengthened in this case by the circumstance, that the check purported to be accepted by the plaintiff, the genuineness of which acceptance, the plaintiff was certainly bound to know. (*Bank of Commerce* v. *Union Bank*, 3 *Comst.* 230.   *Goddard* v. *Merchants' Bank*, 4 *id.* 147.   *Weisser* v. *Denison*, 6 *Seld.* 69.   *Price* v. *McNeal*, 3 *Bur.* 1354.   1 *Binney*, 27.   *Wilkinson* v. *Lutwidge*, 1 *Strange*, 648.   *Story on Bills*, §§ 262, 411. 10 *Wheat.* 333.)

*By the Court*, MULLIN, J.   Lord Mansfield, in *Price* v. *Neale*, (3 *Bur.* 1354,) as long ago as 1762, decided that the drawee of bills of exchange, one of which he had paid, without acceptance, the other after acceptance, could not recover back money thus paid; and the decision is, that it is incumbent on the plaintiff to be satisfied that the bill drawn on him was the drawer's hand, before he accepted or paid it, but it was not incumbent on the defendant to inquire into it.   This case has been followed, both in England and in this country, without any doubt having been expressed by any of the judges, so far as I have been able to discover, as to its soundness.   It is therefore laid down by elementary writers on the law of bills of exchange, that the acceptance, whether general, or for honor or *supra* protest, after sight of the bill, admits the genuineness of the signature of the drawer, and consequently, in favor of a *bona fide* holder for value without notice, if the signature of the drawer turns out to be a forgery, the acceptance

will nevertheless be binding, and entitle such holder to recover thereon according to its tenor. (*Story on Bills*, § 262. *Edwards on Bills*, 433. *Chitty on Bills*, 628.)

In *Story on Bills*, section 411, after repeating the proposition that if the acceptor has accepted a forged bill he must nevertheless pay, proceeds to say : "And if he has paid it, he cannot recover back the money, although the forgery is established by the most conclusive evidence; for by accepting the bill he, by implication in favor of such (a *bona fide*) holder, admits its genuineness, and is not permitted to dispute it, afterwards, although' he can have no recourse against the drawer for any reimbursement for his payment." "This doctrine," he says, "proceeds on the intelligible grounds, 1st. That the drawee, before he accepts, is bound, as a matter of duty, to ascertain whether the signature of the drawer is genuine or not, and next, that when one of two innocent persons must suffer, he who has caused a misplaced confidence, or has misled another, or has omitted his duty, shall suffer, rather than the other party." (*Bank of Commerce* v. *Union Bank*, 3 *N. Y.* 230. *Weisser's adm'rs* v. *Denison*, 10 *id.* 68. *Levy* v. *Bank of United States*, 1 *Bin.* 27. *Smith* v. *Meseer*, 6 *Taunt.* 76.)

If the principles of these authorities apply to the case in hand, they are decisive of it, and the bank cannot recover in this suit.

To justify the defendant in retaining the money obtained on the forged check, it must be a *bona fide* holder for value paid, and without notice. That it is such is conceded in the case.

A check on a bank is, in substance, a bill of exchange payable on demand and governed by the same rules applicable to those securities. (*Edwards on Bills*, 57, *and cases cited.*)

The case then comes to this. A forged check is received by the defendant in good faith, it having paid the full

Salt Springs Bank *v.* Syracuse Savings Institution.

amount named in it, without notice of the forgery. The plaintiff, upon whom it is drawn, receives and pays it, without fraud or contrivance on the part of the defendant. These facts bring the case within the authorities above cited, and they apply to it with all their force.

The defendant's counsel insists that this case is taken out of the principles of the cases cited, on the grounds, 1st. Because the drawer of the check was not a customer, depositer or correspondent of the bank, and hence it cannot be presumed that its officers knew his handwriting; and, 2d. That this taking the check, in the manner stated in the case, by the defendant, was a part of its legitimate business as a savings institution; and the fact that the defendant took it, was calculated to, and did, induce the bank to pay the check without exercising that care and caution which it otherwise would have exercised.

As to the first ground, it is true that in the cases which have been up for decision, the proposition that the acceptor, by accepting, admits the genuineness of the signature of the drawer, and is liable upon the acceptance although the drawer's signature may be a forgery, has been based on the presumption that the acceptor knew the handwriting of his correspondent. The argument is, that when the ground on which the presumption rests is swept away, the presumption itself should not stand, and hence it would be competent for the acceptor to show that the drawer was not a customer or correspondent of his, and therefore he did not know his signature.

I do not think the doctrine rests on the presumption suggested, but rather upon the presumption that before the drawee accepts or pays, he has made such inquiries and examinations as have satisfied him as to the genuineness of the signature and the propriety of acceptance or payment. Knowledge of the genuineness of the signature is but one of several facts which it is important for a drawee to know, before accepting or paying a bill. He must

Salt Springs Bank *v.* Syracuse Savings Institution.

ascertain, first, whether the drawer is a person he knows, and has business relations with; second, whether the state of accounts between them will justify or require him to accept or pay. A mistake in either of them is as fatal as in regard to the genuineness of the signature. Yet no one, I apprehend, would claim that if a drawee should accept or pay a draft or check, he could resist payment in the one case, or recall it in the other, because he was mistaken in the identity of the drawer, or in the statement of the accounts between them. As to the latter—the state of the accounts—the case in 1 *Binney* is decisive.

In the *Bank of the United States* v. *Bank of Georgia*, (10 *Wheat.* 333,) the facts were: The plaintiff had received, in the course of its business, in good faith, bills of the defendant issued as money, and which, it was afterwards discovered, had been fraudulently altered. The plaintiff delivered these bills to the defendant, and the nominal amount of them was passed to the plaintiff's credit, on the defendant's books. After the forgery was discovered, the defendant paid to the plaintiff the balance due to it, except the amount of the forged notes, and these were credited at their real and not nominal amount, and the plaintiff sued to recover the balance so withheld. The court held, Justice Story delivering the opinion, that the principles herein before stated applied to the case. He says, (*p.* 355 :) "We think the defendants were bound to know their own notes; and having once accepted the notes in question as their own, they are concluded by their adoption of the act, and cannot be permitted to set up the defense of forgery, against the plaintiff."

If the bank, in that case, was bound to know its own notes, the plaintiff in this case is surely bound to know whether Crippen, the pretended drawer, was or was not a customer of the bank, and whether his account would justify the payment of the check.

It is not shown that the defendant is prohibited by a law

of the State, or by its charter, from advancing the money on a check, for the accommodation of a stranger; and unless forbidden, it had the same right to take the check that an individual would have. The defendant owed the plaintiff no duty, imposed by custom or otherwise, to inquire into the genuineness of the check. It had the right to take the risk of advancing money upon it if it was forged, or if, for any other sufficient reason, the bank was justified in refusing to pay it. The plaintiff's counter was the proper place at which to ascertain whether the check was genuine. If the plaintiff's officers and clerks omitted to exercise the care and caution they would have used had the check been presented by some other institution or person, it has its agents to blame, and not the defendant. The case of *Ellis* v. *The Ohio Life Ins. and Trust Co.*, (4 *Ohio*, 628,) turned, as I understand it, upon a custom of the banks in the place receiving checks on other institutions to inquire as to their genuineness. And by reason of such custom, the paying bank was presumed to exercise less care and caution than it otherwise would have done. In other words, the plaintiff was himself guilty of negligence, and could not, for that reason, recover.

There is still another ground relied on by the defendant to defeat a recovery in this case, which is deserving of consideration. The check purported to be certified by the teller of the plaintiff's bank, by writing his name across the face of the check. It is not denied but that if the signature was genuine, the bank would have been liable as upon a certified check. Such a certificate is held, in *The Farmers' Bank* v. *Butchers' and Drovers' Bank*, (16 *N. Y.* 125,) to be equivalent to the acceptance of a bill of exchange, and imposes on the bank the obligation to pay the amount for which the check is drawn, to the holder, on demand. The acceptance is that of the bank, and is no more conclusive than is the payment of the check without acceptance. But the fact that the forged

signature of the plaintiff's teller was overlooked, together with the facts that the pretended drawer was not even a customer of the bank—had no account there out of which the check could be paid—demonstrates what would have been, otherwise, matter of inference, merely, that the plaintiff's agents were guilty of very great neglect.

It seems to me that judgment must·be ordered in favor of the defendant, with costs.

Judgment accordingly.

[OSWEGO GENERAL TERM, July 14, 1863. *Allen, Mullin, Morgan* and *Bacon,* Justices.]