### First Nat. Bank of Carthage v. Yost.

*(Supreme Court, General Term, Fourth Department.* November, 1890.)

BANKS AND BANKING—PAYMENT OF FORGED CHECKS.

Defendant, a private banker, in the usual course of business, cashed checks drawn on plaintiff's bank, and on the same day indorsed them for collection on his account, and mailed them to plaintiff. The checks were charged to the account of the drawers, who had sufficient funds on deposit with plaintiff to pay them, and the proceeds remitted to defendant, in accordance with the usual course of dealing between him and plaintiff. The drawers did not take up their vouchers from plaintiff until two months afterwards, when it was discovered the checks were forgeries. Defendant had previously cashed checks for the payee, payable in the town where plaintiff was situated. *Held,* that defendant's indorsement of the checks did not, as to plaintiff, guaranty the signatures of the drawers, and he was not liable to refund the money.

Appeal from circuit court, Jefferson county.

Action by the First National Bank of Carthage against George E. Yost. Plaintiff appeals from a judgment dismissing its complaint, after a trial before the court without a jury.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Kilby & Kellogg,* for appellant. *C. W. Thompson,* for respondent.

MERWIN, J. The plaintiff is a national bank, located at Carthage, Jefferson county, N. Y., and the defendant is a private banker at Theresa, in same county, and both were such in 1887. At that time, and for several years before, the firm of Dickerman & Reed were customers of and depositors with plaintiff to a considerable amount, and drew checks upon the plaintiff in the ordinary way. On the 26th September, 1887, there were presented to defendant, at his banking-house in Theresa, two checks, each dated at Carthage, September 24, 1887, and purporting to have been drawn by Dickerman & Reed on the plaintiff to the order of W. H. Smith, one for $170, and the other for $48. The first named was presented by Smith, and was indorsed by him, and thereupon the defendant paid him the amount thereof, less the usual fee for collection. The other check was presented by Zalmon Pool, and was indorsed by Smith and by Pool, and thereupon the defendant paid Pool the amount thereof, less the usual fee for collection. On the same day, the defendant stamped upon the back of each check with his bank-stamp as follows: "Remit cashier or order for collection for account of Geo. E. Yost, banker, Theresa, N. Y.,"—and sent them by mail to the plaintiff. The plaintiff received the checks, charged them to Dickerman & Reed, who then had sufficient funds on deposit to pay them, and remitted the proceeds to the defendant. This method of collection was in accordance with the custom between plaintiff and defendant. Dickerman & Reed did not take up their vouchers for September until the first part of December following, when they discovered that these two checks were forgeries. They then immediately returned them to plaintiff, with notice of the forgery, and plaintiff upon their demand credited back to them the amount, and on the same day forwarded the checks to the defendant, with notice of the forgery, and demanded repayment. The defendant refused to pay, and this action followed. The plaintiff in its complaint claims to recover the amount of the checks as for money paid under a mistake of fact, without fault upon its part. It is conceded here that the signatures of Dickerman & Reed were forged, and the question is whether the defendant is bound to refund the money. The general principle applicable to such cases is well established. The drawee of a bill of exchange is presumed to know the handwriting of his correspondent, and if he accepts or pays a bill in the hands of a *bona fide* holder, to which the drawer's name has been forged, he is bound by the act, and can neither repudiate the acceptance nor recover the money. *National Park Bank* v. *Ninth Nat. Bank,*

46 N. Y. 77, and numerous cases there cited. *National Bank of Commerce* v. *National Mechanics', etc., Ass'n,* 55 N. Y. 211; *Salt Springs Bank* v. *Syracuse Sav. Inst.,* 62 Barb. 101. This rule has been repeatedly recognized in our courts, and is applicable to checks. It is, however, claimed by the plaintiff that this rule does not control in this case, upon the grounds (1) that the answer admits that the money was paid over under a mistake, and that such payment was without fault of plaintiff; (2) that the defendant, by indorsing the checks, guarantied their genuineness, and threw the plaintiff off its guard.

The allegation in the complaint that the payment to defendant was without fault of plaintiff is not, in terms, denied in the answer, but it is there alleged that the plaintiff was negligent in the payment of the checks, and in the discovery of the forgery, and that the loss or damage, if any, is the result of plaintiff's negligence. In *Clark* v. *Dillon,* 97 N. Y. 376, it is said that an allegation in a complaint, in an action based on negligence, that the injury occurred without the fault or negligence of the plaintiff, is substantially denied by an allegation in the answer that affirmatively states the reverse of this to be true, and that such allegation constitutes a denial. Be this as it may, the record before us indicates that the trial proceeded on the basis that the fault or negligence of plaintiff was at issue. Evidence was given on the subject without objection; and the court, upon the evidence, was justified in declining to find, upon the request of plaintiff, that the plaintiff was without fault or negligence. The indorsement by defendant for collection did not, as to plaintiff, guaranty the signature of the drawer. There was no intention to pass the title. *Hook* v. *Pratt,* 78 N. Y. 374. As well said by Justice KENNEDY in his opinion at the trial: "The indorsement was not made for the purpose of putting the paper in circulation, or for discount, and, in my judgment, can have no other or greater effect in determining the rights of the plaintiff than would have existed if the defendant had presented them at the counters of the plaintiff, and, upon demand, the same had been paid. The indorsement was one of instruction, merely, and could not in any manner tend to throw the plaintiff off its guard, or to release it from the obligation resting upon it of knowing the genuine signature of the drawer." The case of *Bank* v. *Bangs,* 106 Mass. 441, cited by plaintiff, does not sustain its position. The action there was brought to recover back money paid upon a check drawn upon the plaintiff's bank, to the order of defendants, indorsed by them, deposited with their banker, and collected through the clearing house. The signature of the drawer proved to be a forgery. The defendants took it without inquiry, though in good faith, and for value. It was held that the plaintiff could recover; the main circumstance relied on against the defendants being the fact that the check was payable to their own order. The court, however, say that if the suit was between the bank or drawee and a party who took the check in the usual course of business, finding it in circulation, or even by first indorsement from the payee, the loss would fall upon the bank. The case of *Bank* v. *Smith,* 132 Mass. 227, relates to the duty of a collecting agent, upon a qualified indorsement, to give notice of dishonor, and does not apply to the question here.

It is further suggested that the defendant did not use proper caution in taking the checks. There is no allegation in the complaint that the defendant was in fault, nor is it so found. The evidence is not of such a character as to require such a finding. The checks seem to have been taken in the usual course of business, for full value, and in good faith. The defendant did not know the signature of Dickerman & Reed. The payee lived in the vicinity of Theresa, and the defendant had previously cashed for him checks payable in Carthage. No sufficient ground for reversal of the judgment is shown. Judgment affirmed, with costs. All concur.