UNITED STATES NATIONAL BANK, Respondent, *v.* THE NATIONAL PARK BANK OF NEW YORK, Appellant.

*Bills and notes — when a collecting agent who has received money upon a raised draft must return it — a drawee is bound only to know the signature of the drawer — immaterial alteration of a signature.*

Where a draft had been raised, but that fact was not known to any of the parties to it, an agent collecting it for his principal must, in order to absolve himself from the duty of repaying the excess, above the correct amount, to the person from whom he received payment thereof, have actually paid over the amount received by him to his principal.

The drawee is only bound to have knowledge of the signature of the drawer of a draft, and is not precluded from recovering the amount paid upon it, where its body has been changed by increasing the amount named therein.

An alteration of a signature, which consists only in its having been touched by a brush or quill-pen in one or two places, is not a material alteration which makes the signature a forgery.

APPEAL by the defendant, the National Park Bank, from a judgment, entered in the clerk's office of the county of New York on the 23d day of March, 1889, in favor of plaintiff.

*MacKenzie Semple,* for the appellant.

*J. G. Janeway,* for the respondent.

VAN BRUNT, P. J.:

This action was brought to recover the sum of $5,000 paid by mistake by the plaintiff to the defendant.

It appears from the uncontradicted evidence that on the 7th of April, 1884, a man calling himself John Blake called at the First National Bank of Albuquerque, N. M., and purchased a draft drawn on the plaintiff for $2,000, numbered 8605. He requested a letter to F. MacManus & Sons, of Chihuahua, to identify him should he have necessity to cash his draft at that place, whither he was going. Mr. Geary, the cashier of the Albuquerque Bank, thereupon wrote a letter and gave the same to Mr. Blake, in which he stated that it was written for the purpose of identifying Mr. Blake, whose signature was appended below, and who carried the draft hereinbefore mentioned. This draft was presented by Blake to MacManus & Sons and cashed in the latter part of April. On the seventeenth

of April a man, styling himself James R. Wood, called at the Albuquerque Bank and purchased a draft to his own order for twelve dollars and fifty cents, which was numbered 8631 and signed by the cashier of the bank, D. Geary, and drawn upon the United States National Bank of New York. Some two weeks later Blake called again at MacManus & Sons and offered the draft in suit with a request that it be cashed, which was done and he left. The draft in suit was apparently a draft numbered 8631, dated April 19, 1884, upon the United States National Bank to the order of John Blake for $5,000, signed " D Geary, Cashier " This draft, when cashed by the plaintiff, bore the following indorsement: " John Blake — Pay to the National Park Bank or order for account of F. MacManus & Sons. F. MacManus & Sons." The Albuquerque Bank, upon being advised of the presentation of this draft, notified the plaintiff that it had not written the draft for $5,000, as presented, paid and returned, but had made such draft to the order of Wood for twelve dollars and fifty cents, the number of the draft remaining unchanged. The plaintiff, immediately, upon notice of the raising of the amount, demanded of the defendant a return of the sum of $5,000, less twelve dollars and fifty cents, the amount for which the draft had originally been drawn, which was refused, and this action to recover the same commenced.

There were two defenses presented ; the first was, that the defendant bank was merely an agent for collection, and had remitted the proceeds of the collection to its principal. The second was, that the whole draft was a forgery.

The referee found that the draft for twelve dollars and fifty cents was fraudulently altered, the name of the payee being changed from Wood to Blake, and the sum for which it was drawn being changed from twelve dollars and fifty cents to $5,000, and the date being changed from April 17 to April 19, 1884, and that the draft or paper writing when presented by the defendant to the plaintiff for payment did not bear the signature of D. Geary, cashier, in the precise condition in which it had been by him originally affixed to said order, and that the writing purporting to be the signature of D. Geary, cashier, which was upon the alleged draft or bill of exchange when presented by the defendant to the plaintiff for payment, bore evidence of having been touched up with a brush or

quill-pen in one or two places.   The referee refused to find that the defendant had accounted for and paid over the proceeds of the draft to F. MacManus & Sons without notice of any claim by or on the part of the plaintiff, and reported in favor of the plaintiff, and from the judgment thereupon entered this appeal is taken.

There are two questions which seem to be presented upon this appeal.

The first is whether the defendant, if an agent for collection only, has paid over the proceeds of the collection to F. MacManus & Sons, and the second is, was the signature of the draft in question a forgery?   Upon an examination of the evidence in the case we fail to find any which supports the allegation of the answer that the defendant paid over to F. MacManus & Sons the proceeds of these drafts.

The only evidence to support this contention seems to be the testimony of the assistant cashier of defendant and one Scott, a member of the firm of MacManus & Sons.   All that the cashier swore to was that, prior to the time of notice and demand upon them, they had accounted to MacManus & Sons for the $5,000 which they had received from the plaintiff.   The testimony of Scott is that he forwarded this draft in due course of business to the defendant for collection and to be credited in its account with them. There is no evidence whatever that the defendant had, at the time it received notice of the raising of this draft, parted with one single cent of the money collected on account thereof.

The evidence of the cashier would have been entirely true had it simply passed it to the credit of MacManus & Sons and kept the money in its own bank during the whole period which elapsed between the payment and the discovery of the fraud.   If this money had been transferred actually to MacManus & Sons, it is clear that both the cashier and Mr. Scott would have so testified. There was no transfer of funds.   All that was done, as appears from the evidence, was to credit MacManus & Sons with the amount; and there is no evidence whatever that MacManus & Sons ever drew against that particular credit prior to the time of the discovery of the fraud.   In order to absolve an agent who is simply an agent for collection he must actually part with the money; he must pay over the proceeds to his principal.   It is not sufficient to credit the same

in account.   This is strikingly illustrated in the first case which is to be found in the books, which settles the law in regard to the rights of parties to actions similar to the one at bar — *Bank of Commerce* v. *Union Bank* (3 N. Y., 236).   In that case the money was credited in the account of the correspondent of the Union Bank, and yet a recovery was had clearly upon the principle that crediting in account is not equivalent to paying over the proceeds. The same principle was enunciated in the case of *The National Park Bank* v. *Seaboard Bank* (114 N. Y., 28).

There was, therefore, no evidence calling upon the referee to find, as matter of fact, that the defendant had accounted to its correspondents for the moneys collected upon this draft prior to its being informed of the fraud which had been perpetrated. And the plaintiff's right to recover is fixed, unless the signature to the draft was a forgery, the rule, as laid down in *Crawford* v. *West Side Bank* (100 N. Y., 54), being that the drawees of a check or bill are held to a knowledge only of the signature of their correspondents, the drawees, and not for a want of knowledge of the genuineness of the body of the instrument, as between themselves and such other parties as have equal means of determining the existence of an alteration.   Such parties take the paper relying solely upon the reputed responsibility of their transferrers, and the other parties to it, and its apparent genuineness, and they, therefore, deal with it at their peril.   They have no duty to perform in respect to it, except that of guarding their own interest, and in paying and transferring it to others they take the risk of loss occurring from fraudulent alterations.

It is conceded that the paper of which this fraudulent draft consisted is the identical paper upon which the draft for twelve dollars and fifty cents was drawn.   It is conceded that a genuine signature of D. Geary, cashier, appeared upon that draft in the place where the signature of D. Geary, cashier, now appears.   It is conceded that all the other written portions of the draft were altered as above stated; and the single question which remains is as to the genuineness of the signature, D. Geary, cashier, as it now appears upon the altered draft.

The referee finds that the altered draft did not bear the signature, D. Geary, cashier, in the precise condition in which it had been by him originally affixed to the paper, and that it bore evi-

dence, at the time it was presented by the defendant to the plaintiff for payment, of having been touched with a brush or quill-pen in one or two places.

It is claimed upon the part of the defendant that the evidence shows that the signature, D. Geary, cashier, is, in its entirety, a forgery, and that, even though the finding of the referee is correct, it is, nevertheless, a forged signature within the meaning of that term and the plaintiff cannot recover. This position of the defendant we do not think can be maintained. It seems to be a necessary ingredient of forgery that some alteration or fabrication of an instrument, or some part of it, is made by which its meaning or language is changed, or whereby a new operation is given to it; and if what has been written upon or erased from an instrument has no tendency to produce this result, or to mislead any person, it is not a forgery or alteration. (1 Greenl. Ev., § 566; 2 Russell on Crimes, m. p. 319.) Therefore, unless the signature, "D. Geary, Cashier," was destroyed in its entirety, the mere touching up of the signature, as found by the referee, would not be such an alteration as to destroy the validity of the instrument. And this seems to have been the theory upon which the defense proceeded upon the trial, because they sought to establish by their expert testimony that all the ink upon the alleged draft was taken from the paper, and that it was (except so much of it as was printed) entirely reconstructed.

An examination of the evidence fails to convince us that the referee erred in refusing to find in accordance with this claim. The evidence upon the part of the defendant was that of experts who were unfamiliar with the signature of the cashier, and who only testified, the one from some scientific tests, and the others from a comparison of the signature in question with those acknowledged to be genuine, and from the appearance of the signature of the draft in question. The evidence of the experts who testified from a comparison of signatures seems to us to establish the strength of the plaintiff's case. It is admitted by them that certain characteristics are always present in signatures whereby you may detect a forgery, and that these characteristics run through all the signatures of the same party whether the signatures be exactly alike or not.

The evidence upon the part of the plaintiff was that of the cashier himself, and of various persons who had seen him write and were

familiar with his signature, and they all swore that in their opinion that signature was the veritable signature of the cashier. How much better were they able to judge whether the characteristics by which the genuineness of the signatures is to be recognized were present than those two witnesses who had never, so far as the evidence shows, seen the cashier write, and had only seen two or three of his genuine signatures?

The testimony of the cashier is attached, because of a letter which he wrote in reference to this signature, in which he did not express himself in as positive terms as he did when testifying as a witness. This fact in no manner discredited the evidence. On the contrary, it added to its weight, in that examination and consideration seem to have confirmed first impressions.

The testimony of the witness Carvalho that this signature was forged in its entirety is discredited by the testimony of every witness who was familiar with the signature of the cashier. It is incredible, had this signature been manufactured in the way claimed by this witness, that all these persons should pronounce it a genuine signature.

In this condition of the evidence there is no such preponderance of proof in favor of the theory advanced by the defendant as calls upon the court for a reversal of the findings of the referee. Upon the contrary, the conviction produced by a reading of the evidence is, that the signature attached to the draft in question is the genuine signature of D. Geary, cashier, touched up, perhaps, in some unimportant particulars; and as we have seen the rule in reference to forged instruments is that immaterial alterations do not constitute forgery, so the mere touching up of a letter or two in the signature in question in no manner destroyed the signature so that it might not still be called genuine. The integrity of the signature must be effected, and the simple crossing of a t, or the dotting of an i, or the putting in of a period between initials, or the touching of a letter, has no consequences.

We are of the opinion, therefore, that the judgment appealed from should be affirmed, with costs.

Barrett and Bartlett, JJ., concurred.

Judgment affirmed, with costs.