TEXAS STATE BANK OF WALNUT SPRINGS et al. v. FIRST NAT. BANK OF MERIDIAN et al.

(No. 7880.)

(Court of Civil Appeals of Texas. Ft. Worth. March 28, 1914. Rehearing Denied May 23, 1914.)

1. BANKS AND BANKING (§ 226*)—DEPOSITS—ACTIONS—VARIANCE BETWEEN ALLEGATIONS AND PROOF.

In an action by one bank against another on a forged check, the petition alleged that the check was drawn on plaintiff bank, while the check in evidence was originally drawn on another bank, but on the face thereof near the top was written the name of plaintiff bank. *Held*, that there was no fatal variance; there being no question as to the identity of the check.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 867–870; Dec. Dig. § 226.*]

2. BANKS AND BANKING (§ 147*)—DEPOSITS—PAYMENT OF FORGED CHECKS—RIGHTS AS BETWEEN BANKS.

The rule that a bank is conclusively presumed to know the signature of its depositors and cannot recover for the payment of a forged check to a bona fide purchaser is applicable only where the purchaser is not negligent in failing to discover the forgery.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–454; Dec. Dig. § 147.*]

3. BANKS AND BANKING (§ 149*)—DEPOSITS—PAYMENT OF FORGED CHECK—RIGHTS AS BETWEEN BANKS.

A bank paid a forged check drawn on a bank in another town, and, indorsing it for collection, sent it to plaintiff bank located in the same town with the drawee bank. The drawee refused to pay it because the drawer had no account with it, whereupon plaintiff, believing the check was meant to be drawn on it, as the drawer had an account with it, paid it. *Held* that, as the indorsement to plaintiff was for collection only, and did not pass title, the payment by plaintiff was in the nature of an advancement by it as agent for defendant bank, and hence it could recover the amount advanced.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 453, 454; Dec. Dig. § 149.*]

4. BANKS AND BANKING (§ 147*)—FOLLOWING TRUST PROPERTY OR THE PROCEEDS THEREOF.

A bank, after having paid a forged check, could not follow the money paid to the forger into the hands of a third party, who took it in due course of business in good faith upon a valuable consideration.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–454; Dec. Dig. § 147.*]

Appeal from Bosque County Court; S. P. Hale, Judge.

Action by the First National Bank of Meridian and others against the Texas State Bank of Walnut Springs and others, in which defendants filed a plea over against W. A. Lee. From judgments for plaintiffs against defendant bank and for defendant bank against defendant Lee, both defendants appeal. Affirmed as to the bank and reversed and remanded as to Lee.

H. S. Dillard, B. J. Word, J. P. Word, and S. H. Lumpkin, all of Meridian, for appellants. Cureton & Cureton, of Meridian, and Davis & Cocke, of Waco, for appellees.

DUNKLIN, J. Will Gotcher forged the name of W. B. Griffin to a check drawn on the Farmers' State Bank of Meridian, Tex., for $800, payable to N. W. Murffey or bearer. Gotcher representing himself to be Murffey, the payee, presented the check to B. E. Seale, cashier of the Texas State Bank of Walnut Springs, Tex., to be cashed, telling Seale that he had just sold some mules to W. B. Griffin, and that the check was given for the purchase price of same. He was a stranger to Seale at that time, but represented that he was a neighbor of Griffin. He stated that he desired to open an account with the Texas State Bank of Walnut Springs, and desired $450 in cash on the

check, and $350 to be deposited to his credit in that bank. The cashier complied with this request, and forwarded the check to its correspondent bank at Waco for collection, having first indorsed it as follows:

"Pay to the order of any bank, banker, or trust company. Previous indorsements guaranteed. Texas State Bank of Walnut Springs, Texas."

The bank who first received it for collection was the Citizens' National Bank of Waco. That bank forwarded it to the City National Bank of Galveston, who in turn sent it to the First National Bank of Meridian. The bank last named presented it to the drawee, the Farmers' Guaranty State Bank of Meridian, who refused payment because W. B. Griffin, whose name appeared as drawer of the check, had no account in that bank. But W. B. Griffin did have an account with the First National Bank of Meridian at that time, and the officers of that bank, acting upon the supposition that W. B. Griffin had intended to draw the check upon that bank, instead of the drawee bank, stamped the name of the First National Bank of Meridian, Tex., on the face of the check just above the name of the drawee bank, then charged it to W. B. Griffin, and forwarded the amount of the check to the Galveston bank. Through the Galveston bank and the Waco bank the amount so collected was paid over to the Walnut Springs bank. Later the First National Bank of Meridian was informed by Griffin that the check was a forgery, and his account thereupon was credited with the amount of the check that had been charged against him. The cashier of the Walnut Springs bank, having been informed of the forgery, paid over to the First National Bank of Meridian $350 which had been placed to the credit of the forger, and which had never been drawn out by him, but refused to pay the balance, $450, which Gotcher had already collected.

Thereupon the First National Bank of Meridian instituted this suit against the Walnut Springs bank to recover such balance. In its petition plaintiff alleged substantially that defendant was guilty of negligence in purchasing the check without detecting the forgery; that Gotcher was a stranger to defendant's cashier at the time, and that the cashier had the means and opportunity of ascertaining whether or not the signature to the check was genuine, and was charged with the duty so to do before purchasing and forwarding the check for collection, and that by his acts in so purchasing, indorsing, and forwarding the check for collection plaintiff was led to believe that the check was genuine, and, acting upon such belief, paid it.

In its answer to plaintiff's petition, the defendant bank pleaded a general denial, and specially that plaintiff, in cashing the check purporting to have been signed by W. B. Griffin, who was a depositor of that bank, without discovering the forgery, was guilty of negligence precluding a recovery; and by way of a special refutation of the charge of negligence against it further alleged the circumstances recited above under which defendant bank accepted the check from Gotcher and paid him the $450 and deposited the balance to his credit.

Defendant also filed a plea over against W. A. Lee alleging that Gotcher paid the $450 he had received from defendant bank to Lee. Defendant further alleged that at the time Lee received the money he knew, or had reason to believe, that Gotcher had obtained it from defendant bank by fraud, and by committing forgery, and that Lee had paid no consideration therefor. It was further alleged that after Lee received the money, and while all the means which he possessed for enforcing any demand he held against Gotcher were still available to him, he was advised by defendant bank of such forgery; notwithstanding which he refused to pay over the money to defendant bank, and converted it to his own use. A prayer for recovery against Lee was predicated upon the facts so alleged. In addition to a general denial of the facts alleged in the plea over against him, Lee alleged negligence on the part of defendant bank in paying the money to Gotcher, a stranger, without making any effort to discover whether or not the check was genuine; further, that if any part of the money was paid to him he received it in good faith and in due course of trade, without any notice of the forgery; that he had credited the payment upon a valid debt owing to him by Gotcher, which was well secured by chattel mortgage on stock of value in excess of the amount of money so received; and that it will now be impossible to reinstate such original debt and security.

The testimony showed without controversy that soon after the transaction between Gotcher and defendant bank Gotcher paid to Lee $450 on a note he owed to Lee, and to secure which he had executed a mortgage on about 60 head of cattle.

The transaction between Gotcher and defendant bank was through B. E. Seale, its cashier, who after identifying the forged check, testified as follows:

"The party who presented that check to the bank passed his name as N. M. Murphree, but afterwards I learned his name was Gocher. Mr. Gocher came into the bank, and I was at the window, and I saw he was a stranger, and he introduced myself to him, and he said Murphree was his name, and that he wanted to open an account with us. I asked him where he was from, and he said he was a neighbor of W. B. Griffin, and said he had sold Mr. Griffin some mules for $800. He handed me a check for $800 and said he wanted $450 in cash, and wanted credit for $350. Yes; he had the check already written out when he came in the bank. My impression at the time was that the check was drawn on the First National Bank of Meridian. I knew that Mr. Griffin was a customer of the First National Bank of Meridian, while it was my impression at the time it was on the First National Bank of Meridian, but it

was listed by Mr. Rushing (defendant's book-keeper) as being on the Farmers' Guaranty State Bank of Meridian. I think there were some marks on the check, but I may be mistaken about this. It is my recollection that there was. I paid Gocher $450 in cash, and gave N. M. Murphree credit for $350. I put it in N. M. Murphree's name on my books. I paid him all this money in currency. I did not ask him for indorsements, because he was opening an account with the bank, and if I had asked him to get somebody to identify him he might have said that he would go to the other bank. As soon as I cashed the check I called Mr. Rudasill up over the telephone and asked him if he would pay the check, and he said he would pay it. Had he said he would not pay the check I could have gotten the money from him before he left town. Yes; Gocher and myself were the only men in the bank at the time the check was cashed."

J. M. Rudasill, president of plaintiff bank, testified as follows:

"I remember a telephone conversation with Mr. Seale, of the bank of Walnut Springs, about the date the check in controversy was cashed. Mr. Seale called me up and asked me if I would pay W. B. Griffin's check on our bank for $800, and I told him I would pay a check for that amount. Yes; our bank did pay a check purporting to be signed by W. B. Griffin for that amount. Yes; I have seen that check before. No; that is not W. B. Griffin's signature."

C. W. Tidwell, active vice president of plaintiff bank, testified with reference to the check:

"I do not know whether I saw this check until after it was paid and the forgery discovered or not. It is a frequent occurrence for checks to come to our bank drawn on other banks. Sometimes this happens two or three times a day, and sometimes not oftener than once or twice a week. We frequently have checks drawn by customers of ours on checks of other banks. We sometimes present these checks to the other banks for collection, and if they do not pay them we decide the check was intended for our bank. Yes; we keep the signatures of some of our customers; if a new man comes in we take his signature. No; I would not take the signature on this check as the signature of Mr. Griffin. I cannot tell which one of our employés took this check over to the other bank when it came to us. Yes; Mr. Griffin had a deposit in our bank at that time of the payment of the check. I think if I had looked at the signature at the bottom of that check I would have known that it was not W. B. Griffin's signature."

The trial judge instructed the jury to return a verdict in favor of the plaintiff against defendant bank for the $450 sued for, with interest, which was done.

Upon the plea over against Lee the jury were instructed as follows:

"You are further instructed that, if you find from a preponderance of the evidence that the defendant Will Gotcher delivered to W. A. Lee any part of the $450 received by Gotcher from the Texas State Bank on the forged check which has been admitted in evidence before you, and if you further believe that Lee knew at the time that said money so paid him, if any, was procured by such forgery, or if you find that any of said money was paid to said Lee by said Gotcher, and that said Lee afterward was advised and learned that it was the proceeds of said check before he had changed his relation, to his injury or loss, by the surrender of any security, as creditor of said Gotcher, then you will find for the defendant Texas

State Bank against said defendant Lee for such sum as you may find from the evidence to have been so received by said Lee from said Gotcher, with interest at the rate of 6 per cent. per annum thereon from the date you may find it was so received by said Lee."

A verdict was returned in favor of defendant bank against Lee for $450, with interest. Defendant bank and defendant Lee both have appealed.

[1] In plaintiff's petition it was alleged that the forged check was drawn on plaintiff bank, and to the introduction of the check in evidence upon the trial defendant bank objected, on the ground that it was at variance with the check alleged by plaintiff, in that, as shown by undisputed testimony, it was drawn on the Farmers' Guaranty State Bank of Meridian, and not upon the plaintiff, and because, further, after plaintiff received it with indorsements thereon it changed the check by stamping its name upon the face of the check just above the name of the drawee bank, thus making it appear that it was drawn on plaintiff bank. Error has been assigned to the action of the court in overruling the objection. Appended to the bill of exceptions to this ruling is the following statement by the trial judge in approving the bill:

"Allowed with the explanation that at the time the check was offered in evidence it had stamped on the face thereof, near the top, the words, 'First National Bank of Meridian,' and that before it was admitted in evidence testimony had been admitted to the effect that when said check was presented to the Texas State Bank it had written in pencil above the words 'Farmers' Guaranty State Bank,' the words, 'First National Bank,' and the attorneys of all the parties to the suit had spoken of said check as the forged check, and had it identified by witnesses as the check referred to in their several pleadings. No surprise was claimed by any party on account of variance, and thereupon the said check was admitted in evidence."

In view of this explanation by the trial judge, and for the further reason that plaintiff's suit was not upon the check constituting of itself the cause of action, but was upon all the facts alleged, this assignment is overruled. F. W. & D. C. Ry. Co. v. Harland, 62 S. W. 971; rule 62a (149 S. W. x).

[2] By another assignment appellant bank insists that the court erred in giving a peremptory instruction in plaintiff's favor, and in not instructing the jury to return a verdict for appellant if they should believe, as established by uncontroverted evidence, that the check was drawn on the Farmers' Guaranty State Bank of Meridian. By different propositions the reasons presented for sustaining this assignment are substantially as follows: First, the voluntary payment of the check by plaintiff after the drawee had refused to pay it; second, the alleged negligence of the plaintiff in paying the check purporting to be that of its customer W. B. Griffin, whose signature was known to the plaintiff, relying on previous indorsements of the check, and without a close examination of the handwriting of the drawer to deter-

mine whether or not same was that of Griffin; third, the contention that there was no negligence on the part of appellant in failing to require identification of Gotcher before paying to him the money on the check, which was payable to bearer.

By other assignments the same reasons are urged in support of the contention that the court erred in overruling appellant's motion for a new trial. In support of the assignments appellant has cited several authorities, a few of which only will be mentioned.

The case of N. W. Nat. Bank v. Bank of Commerce, by the Supreme Court of Missouri, reported in 107 Mo. 402, 17 S. W. 982, was a suit by the Northwestern National Bank of Chicago against the Bank of Commerce of Kansas City. The facts upon which a recovery was sought were as follows: A forged draft on plaintiff purporting to be drawn by a bank in Omaha, one of plaintiff's customers, in favor of John Whitney, who, as appeared afterwards, forged it, was cashed by the defendant bank. That bank then forwarded it to Chicago for collection, indorsing it "For collection," and when presented plaintiff bank paid it. It was held that defendant was a bona fide holder of the draft; that the indorsement "For collection" did not transfer to plaintiff the ownership of it, nor of its proceeds when collected, and that plaintiff could not recover by reason of the general rule, which was announced in the following language:

"The general rule is that the drawee of a bill of exchange or draft is bound to know the handwriting of his customer, the drawer; and, if he pays a bill or draft in the hands of a bona fide holder for value, he is concluded by the act, although the bill or draft turns out to be a forgery. This rule was first announced by Lord Mansfield in Prive v. Neal, 3 Burrows, 1354 (1762), and has been followed and approved by the English courts, and an overwhelming majority of the American courts, including the Supreme Court of the United States and of this state. U. S. Nat. Bank v. National Park Bank [59 Hun, 495] 13 N. Y. Supp. 411; Stout v. Benoist, 39 Mo. 277 [90 Am. Dec. 466]; Bank v. Yost [58 Hun, 606] 11 N. Y. Supp. 862; 4 Harv. Law Rev. 297, and cases cited. See 3 Amer. & Eng. Encyc. Law, 222, where the English and American authorities are collated."

The case of First National Bank of Rolla v. First National Bank, also by the Supreme Court of Missouri, reported in 141 Mo. App. 719, 125 S. W. 513, was very similar to the case last cited, and in which, as in the former case, it was held that a bank upon whom a forged check was drawn could not, after honoring it, recover the amount paid to another bank who was a bona fide holder for value. In the decision in that case numerous authorities are discussed showing the different doctrines announced in different jurisdictions. Some of those authorities follow the general rule that the drawee bank is conclusively presumed to know the signatures of its depositors, and in no event will be allowed to recover the amount paid on a check forged upon one of such depositors. According-

ing to others the drawee may recover of the purchaser of a forged check the amount paid when it can be shown that the purchaser was negligent in failing to discover the forgery at the time he purchased it.

In Farmers' & Merchants' Bank v. Bank of Rutherford, by the Supreme Court of Tennessee, reported in 115 Tenn. 64, 88 S. W. 939, 112 Am. St. Rep. 817, it was held that the drawee of a forged check who knows the genuine signature of the person whose name is signed thereto is guilty of negligence precluding a recovery of the amount so paid when such payment is made relying upon previous indorsements, and without examining such signature to determine whether or not it is genuine.

In Moody v. National Bank, 19 Tex. Civ. App. 278, 46 S. W. 660, it was held that the drawee of a forged check, after paying the same, could not recover the amount so paid of another bank to whom payment had been made and who was a purchaser thereof for value and who in purchasing the same was guilty of no negligence in failing to discover the forgery.

Appellant bank and appellee bank both invoke the decision of the First National Bank v. Farmers' & Merchants' State Bank, by the Court of Civil Appeals for the Third Judicial District of this state, 146 S. W. 1034. The facts of that case were substantially as follows: W. T. Nichols was a depositor of the Farmers' & Merchants' State Bank of Ballinger. His name was forged to a check upon that bank which was cashed by the First National Bank of Walnut Springs. After being cashed, and upon demand of the Walnut Springs bank, the Ballinger bank paid it. The suit was instituted by the latter bank against the Walnut Springs bank to recover the money so paid to it, and a judgment allowing such a recovery was affirmed on appeal. The check bore the indorsement:

"Pay to the order of any bank or bankers. All previous indorsements guaranteed."

Such indorsement is practically the same as in the present case. In the opinion the following finding of fact appears:

"The testimony shows that, if the cashier of the Ballinger bank had exercised proper care, he could have ascertained that the draft was a forgery before that bank paid it, and that he was guilty of negligence in that respect. No testimony was submitted showing how, why, or under what circumstances the defendant bank acquired and paid for the draft, but it was admitted at the trial that it cashed it and paid for it at the time it was drawn."

In the opinion rendered the court quotes with approval section 464 of Moss on Banks and Banking, in which it is stated that the old doctrine promulgated in 1762 by Chief Justice Mansfield, in effect, that a bank is conclusively presumed to know the signatures of its depositors and cannot recover money paid to the purchaser of a forged check in the name of a depositor, is "fast fading into the misty past, where it belongs." In accord with the modern rule, as announced by

Mr. Moss, the court, in the concluding part of the opinion, uses the following language:

"True it is the plaintiff was guilty of negligence in not ascertaining the forgery before it paid the draft, but it does not appear that such negligence resulted in any injury to the defendant. In other words, the draft being a forgery, the defendant could not enforce its payment, and had no right to the money received from the plaintiff thereon, and, if compelled to refund it, will be in no worse condition than it was before it received the plaintiff's money. Such being the case, it is immaterial that the plaintiff was negligent, because it does not lie in the defendant's mouth to say to the plaintiff: 'While I had no right to the money, I have a right to keep it, because if you had exercised proper care and diligence I would not have obtained it.' Such doctrine is unsound at law, is contrary to the plain principles of justice, and repugnant to the fundamental rules of equity. If it should be held that the title to property can be divested out of the owner merely by his negligence in permitting it to pass from his possession, a thief might acquire title to property which he had stolen from a negligent owner. Such doctrine cannot be sound."

See, also, 2 Daniel on Negotiable Instruments, §§ 1655a, 1657; Randolph on Commercial Paper, § 1486. This reasoning appeals to us as sound, and we approve it. Furthermore, it is in line with the decision of our Supreme Court in Rouvant v. S. A. Natl. Bank, 63 Tex. 610, in which the court, after announcing the general rule that a bank will not be heard to assert a mistake as to the signature of one of its customers after it has paid a forged check, proceeds to quote with approval from Natl. Bank of N. A. v. Bangs, 106 Mass. 444, 8 Am. Rep. 349, in which the following language is used:

"In the absence of actual fault or negligence on the part of the drawee, his constructive fault, in not knowing the signature of the drawer and detecting the forgery, will not preclude his recovery from one who has received the money with knowledge of the forgery, or who took the check under circumstances of suspicion without proper precautions, or whose conduct has been such as to mislead the drawee, or to induce him to pay the check without the usual scrutiny or other precautions against mistake or fraud."

The name of Igell, who was a customer of the bank named in the above case, was forged to a check which was sold to Rouvant. There were some suspicious circumstances in connection with the passing of this check to Rouvant, which were known to him at the time, but which were not communicated to the bank at the time he collected the money on the check. Rouvant was a responsible merchant in the city of San Antonio, and well known to the bank as such. It was held that under those circumstances the bank might well assume that there was no suspicious circumstances attending the execution of the check, "and no question as to the identity of the person who drew and signed it; that the loss was attributable to Rouvant's negligence and upon him it should fall." To the same effect is First Natl. Bank of Danvers v. First Natl. Bank of Salem, 151 Mass. 280, 24 N. E. 44, 21 Am. St. Rep. 450. For a collation of authorities bearing upon the question now under discussion, see note to People's Bank v. Franklin Bank, 17 Am. St. Rep. 884.

In the case of First Natl. Bank of Rolla v. First National Bank, 141 Mo. App. 719, 125 S. W. 513, by the Supreme Court of Missouri, referred to above, the check in controversy bore the following indorsement at the time it was paid by the drawee:

"Indorsement guaranteed. Pay any national or state bank or order."

It was held that such an indorsement was for collection only, and did not operate to pass title to the check.

[3] It will be noted that in the authorities discussed above in each instance the suit was by the drawee of the forged check who had paid the same, while in the present case the plaintiff bank was not the drawee of the check. Plaintiff bank had been selected as one of the agencies of the defendant bank to collect the check from the drawee, and if, as held by the authority last cited, the indorsement was for collection only, and did not operate to transfer title of the check to the plaintiff, then the transaction by the plaintiff bank was essentially an advancement by the plaintiff bank, the collecting agent, to the defendant bank, its principal, of $800, for which it received nothing, and only $350 of the amount so advanced has been repaid to such agent. True, the officers of plaintiff, through a mistake of fact, supposed the check was intended to be drawn upon that bank, and paid the check upon that mistaken belief, but such mistake of fact did not operate to change the legal relations of the parties relative to the check, especially in view of the urgent insistence by the defendant bank that plaintiff had no right to change the check by stamping its name upon the face of the check as the drawee. Under such facts we doubt that the old rule announced by Chief Justice Mansfield above noted would be applicable here. But, however that may be, we are of the opinion that the court did not err in instructing a verdict in favor of the plaintiff against the appellant bank.

[4] We next come to the assignments of error presented by appellant W. A. Lee to the judgment over against him in favor of the defendant bank. One of the assignments is to the refusal of the court to give a peremptory instruction in favor of Lee. As noted above, the court instructed a verdict against Lee in the event of a finding by the jury that he knew of the forgery at the time he received the money from Gotcher, or that afterwards he was advised of the forgery before he changed his relation to his injury or loss by surrendering any former security given him by Gotcher for the debt which Gotcher paid him with the proceeds of the forged check. There was evidence tending to show that the money paid by Gotcher to Lee was a part of the proceeds received by Gotcher from the defendant bank upon the forged check, and that at the time Lee was

advised of such forgery he could have successfully asserted the lien theretofore given him by Gotcher to secure the debt. But there was no testimony tending to show that at the time Lee received the money from Gotcher he had reason to believe that the same had been procured by Gotcher by dishonest methods. In fact, there was no testimony tending to show that at the time Lee received the money he knew from whence it came. Some two weeks elapsed after defendant bank paid Gotcher the money before any one discovered the forgery. Here, again, there is some confusion in the authorities. In the case of Holly v. Domestic & F. Missionary Society, by the United States Supreme Court, reported in 180 U. S. 285, 21 Sup. Ct. 395, 45 L. Ed. 531, many authorities are cited with approval announcing the rule substantially as follows:

"The law wisely from the considerations of public policy and convenience, and to give security and certainty to business transactions, adjudges that the possession of money vests a title in the holder as to third persons dealing with him and receiving it in due course of business and in good faith upon a valid consideration. If the consideration is good as between the parties, it is good as to all the world. 'Money,' said Lord Mansfield in Miller v. Race (4 Burr. 452), 'shall never be followed into the hands of a person who bona fide took it in the course of currency and in the way of his business.' "

To the same effect is First Natl. Bank of Birmingham v. Gibert, by the Supreme Court of Louisiana, 123 La. 846, 49 South. 593, reported in 25 L. R. A. (N. S.) 631, 131 Am. St. Rep. 382, the decision in which contains a collation of numerous authorities, some announcing the general rule; and others announcing certain modifications of the same rule under certain circumstances. The evidence conclusively shows that Lee received the money from Gotcher in due course of trade, and that the transaction as between them was binding, and upon the strength of the foregoing authorities we are of the opinion that the court erred in refusing to give a peremptory instruction in favor of appellant Lee.

For the reasons above noted the judgment in favor of plaintiff bank against defendant bank is affirmed, and the judgment in favor of appellant bank against appellant Lee is reversed, and judgment is here rendered in favor of appellant Lee as against appellant bank's plea over against him.

Affirmed in part, reversed and rendered in part.

CONNER, C. J., not sitting.