BANK OF INDIAN TERRITORY, Appellant, v. FIRST NATIONAL BANK, Respondent.

Kansas City Court of Appeals, November 28, 1904.

1. **BANKS AND BANKING: Collection: Agency.** If a bank take a check in payment of a collection and surrenders the draft it becomes liable to its principal for the amount of the check as it has no power to take anything but money in payment.

2. **BILLS AND NOTES: Acceptance: Maker.** An acceptance of a draft makes the drawee the principal debtor.

3. ——: ——: **Payment.** Payment of a bill is more than an acceptance and concludes the drawee. Bank v. Whitman, 94 U. S. 343, distinguished.

4. ——: **Negligence: Fraud: Innocent Holder.** The rule that one will be charged with notice of a fact if he has information sufficient to put him on inquiry does not apply to commercial paper.

5. ———: **Indorsement: Collection: Owner.** A bill indorsed "Pay order of any bank or banker; all previous indorsements guaranteed," is an indorsement for collection and does not pass the title which remains in the indorser, who is the holder and may sue on the paper.

6. ———: **Hardship: Commercial Interest.** The best interest of the commercial world requires stability and fixedness in commercial law, and the fact that it may work hardship in particular cases should not vary its rules.

7. ———: **Innocent Holder: Peremptory Instruction.** In this case it was error to refuse an instruction directing a verdict for the plaintiff.

Appeal from Buchanan Circuit Court.—*Hon. Henry M. Ramey,* Judge.

REVERSED (*with directions*).

*Brown & Dolman* for appellant.

(1) When defendant bank received the drawee's check on the Stock Yards Bank, in payment of the draft of plaintiff's bank on them and surrendered to drawees the draft, it made the check its own and its liability to the plaintiff bank became fixed, as much so as if it had received the cash. Bank v. Bank, 151 Mo. 320-330, and cases cited. (2) The effect of receiving the draft and giving the drawer credit for the amount on the books of the plaintiff bank as so much money deposited, against which the drawer could immediately check, made the plaintiff bank a bona fide holder and purchaser for value and the absolute owner thereof. Dymock v. Bank, 67 Mo. App. 103; Kavanaugh v. Bank, 59 Mo. App. 540; Ayers v. Bank, 79 Mo. 421; Bullene v. Bank, 79 Mo. 426. (3) The defendant bank became the agent of plaintiff, the owner of the draft, in making the collection. Bank v. Bank, 71 Mo. App. 421; Daly v. Bank, 56 Mo. 94; Herider v. Loan Assn., 82 Mo. App. 427. As such agent it had no authority to receive anything but cash. Bank v. Bank, supra; Lingerfelder v. Leshen,

134 Mo. 55; Thompson v. Chappell, 91 Mo. App. 294. (4) Had the defendant received the cash instead of the check it would have constituted payment to its principal, and it could not, without authority from its principal, pay back the amount to Kemper, Bowman, Hillix & Company, without rendering itself personally liable to plaintiff. Abers v. Bank, 85 Mo. 173; Bank v. Griffin, 113 Cal. 795, 45 Pac. 985; Bank v. Bank, 107 Mo. 402; Bank v. Allen, 59 Mo. 310; Stout v. Benoist, 39 Mo. 277; Goddard & St. John v. Bank, 2 Sand. 247, s. c. 4 Comst. 147; Hoffman v. Bank, 12 Wall. 181; Goetz v. Bank, 119 U. S. 551. (5) The court erred in refusing to render judgment on the pleadings in favor of plaintiff, and also erred in overruling plaintiff's motion for judgment in its favor, notwithstanding the verdict. Emmert v. Myer, 65 Mo. App. 609; Bank v. Stone, 93 Mo. App. 295; Hunt v. Ford, 142 Mo. 283; Hoffman v. Bank, 11 Wall. 181; Goetz v. Bank, 119 U. S. 551. (6) If both are equally innocent and equally ignorant, the loss should remain where the chances have placed it. Stout v. Bensoit, 39 Mo. 277, and cases cited; Bank v. Allen, 59 Mo. 310; Bank v. Bank, 107 Mo. 402; Crippen v. Bank, 51 Mo. App. 508. Bank v. Bank, 151 Mo. 321; Klapper v. Levi, 33 Mo. App. 322; Grumbach v. Hirsch, 43 S. W. 1031; Tile Co. v. Bank, 23 Atl. 423; Hoffman v. Bank, 12 Wall. 191, 192; Goetz v. Kansas City, 119 U. S. 551.

*Culver, Phillip & Spencer* for respondent.

(1) If an agent receives for collection a draft drawn upon a person (not a bank) who has not accepted it, and is in no way obligated to pay it, and the drawee, under a mistake of fact, believing that he owes the debt for which the draft is drawn, pays and receives the draft, and afterwards learns of his mistake, notifies the agent, tenders back the draft and demands the return of his money from the agent before the latter has re-

mitted to its principal, and the agent in those circumstances returns the money paid by mistake and receives the draft uncancelled, can the principal hold the agent responsible for the amount of money which he collected from and returned to the drawee? (2) That money paid under mistake of fact, affecting the liability of the payor, can be recovered back is too well settled to require the citation of authority. 22 Am. and Eng. Enc. of Law (2 Ed.), 621. The mistake need not be mutual; it is sufficient that the payor alone was mistaken. 22 Am. and Eng. Enc. of Law (2 Ed.), 625. (3) The drawee, until he has accepted, is under no obligation to pay the bill, can not be sued upon it and is not even a party to the bill. 1 Daniels, Neg. Ins. (3 Ed.), sec. 480. When he accepts the bill his relation to the paper, his rights and liabilities change. 1 Daniels, Neg. Ins. (3 Ed.), secs. 531, 532, 533. (4) It is difficult to construe payment as an acceptance under any circumstances. Bank v. Whitman, 94 U. S. 347. (5) The drawee could become an acceptor only in the manner provided for by our statute and this it did not do. R. S. 1899, sec. 443. (6) Let us assume now that the commission company had accepted the draft and then paid it under the mistake that it had funds belonging to the drawers. In such circumstances, if neither the plaintiff nor the drawee were to blame, the law would allow the loss to remain with the acceptor. But if the loss was occasioned by the act or neglect of the plaintiff, then it and not the innocent acceptor should bear the loss, and the acceptor could recover the amount paid. Stout v. Bensoit, 39 Mo. 297. (7) There is not a scintilla of evidence in the record either that the plaintiff was the holder of the draft or that the defendant was its agent to collect it. On the contrary, the undisputed evidence is that the First National Bank of Kansas City was the holder and that it sent the draft to defendant to collect. (8) Had the endorsement been "for collection" it would not have passed title to the

endorsee, except only so far as to enable the indorsee, as agent, to demand, receive and sue for the money to be paid, and the plaintiff would have remained the owner. Eaton & Gilbert, Commercial Paper, 329; Bank v. Hubbell, 117 N. Y. 384; Best v. Bank, 76 Ill. 608; Lock v. Silk Co., 37 Mich. 479; Bank v. Hollister, 21 Minn. 385. But the endorsement is a general endorsement, the effect of which is to take the entire title out of the plaintiff and make the First National Bank of Kansas City the holder and owner. Eaton & Gilbert, Commercial Paper, 327.

BROADDUS, J.—The facts of the case are as follows: On the 24th day of February, 1903, one H. H. Hagan, of Guthrie, Oklahoma Territory, drew a sight draft on Kemper, Bowman & Hillix payable to the order of plaintiff for the sum of seven hundred dollars. On the same day, plaintiff received the draft at Guthrie, where it did business, and credited Hagan with the full amount of $700, and indorsed and forwarded it through its correspondents to defendant bank in St. Joseph, Missouri, for presentation and payment. On March 3, defendant presented the draft to the drawers, who gave their check for its payment. Defendant at the same time accepted the check, stamped the draft paid and surrendered it to the drawees, and gave the Union National Bank of Kansas City, from whom they received the draft, credit for its amount. On the next morning —March 4—the drawees informed defendant bank that a newspaper had reported that morning that the drawer, Hagan, had killed himself, and they asked defendant if it could do anything to help them to hold the money, and stated that they had not received the cattle on which the draft had been drawn. Whereupon, defendant's agent told the drawees that it would assist them in the matter, and did telephone to Kansas City in reference to its payment. The defendant then presented the check it had received in payment of the draft to the

Stock Yards Bank, upon which it was drawn, and payment was refused, the drawees in the meantime having stopped its payment. Afterwards, on the same day, defendant surrendered the drawees' check, took back the draft, protested it for non-payment, and returned it to plaintiff. The drawees were live stock commission merchants at St. Joseph. Hagan had on prior occasions shipped them cattle and drawn drafts upon them which they had paid. Upon the occasion in controversy he wrote them a letter stating that he had shipped two cars of steers and had made a draft on them for $700. On the day the draft was paid they wrote Hagan as follows: "Your draft came in to-day, but no cattle in sight. We paid your draft as we thought the cattle had been delayed some way. If the cattle are not in to-morrow we will make sight draft on you for amount, but think certainly will get in to-morrow," etc. On March 4 Hagan died without having shipped any cattle to drawees. The plaintiff paid out on checks drawn by Hagan against the credit for said draft $674.42. There was evidence to the effect that the president of plaintiff bank had some suspicion of Hagan's honesty and called the attention of its other officers to that effect, but it appeared that he was absent on the day the draft was made, and Hagan got credit. The judgment and finding were for the defendant from which plaintiff appealed.

The conceded rule of law is that, if a bank receives a draft for collection and takes in payment a check from the party who is bound to pay such draft, and surrenders the same to him, such collecting bank is liable to its principal for the amount of the check, as an agent authorized to receive money has no implied power to receive a check in payment. [Bank v. Bank, 151 Mo. 329.] And it is admitted that if the drawees had accepted the draft they would have been liable, for the effect of an acceptance is to constitute the acceptor the principal debtor; and if the drawees were

liable plaintiff was entitled to recover. 1 Daniels on Neg. Inst., secs. 480, 532, 534.

But respondent insists that there is a difference between the payment and acceptance of a bill; and that payment never operates as an acceptance—that the effect of the former is to extinguish the bill and the latter is an admission that the drawee has in his hands funds of the drawer. To support the theory that a payment never operates as an acceptance we are cited to the case of Bank v. Whitman, 94 U. S. 343. It was there held that "a payment to a stranger upon an unauthorized indorsement does not operate as an acceptance of a check, so as to authorize an action by the real owner to recover its amount as upon an accepted check." It is hardly perceivable how the holding could have been otherwise as the indorsement was without the owner's authority and consequently as such created no privity of contract between the drawer and drawee. The court did not hold that a payment was not equivalent to an acceptance, but that under the circumstances it was not, because the payment itself was unauthorized.

Under the statute, "no person within this State shall be charged as an acceptor of a bill of exchange unless his acceptance shall be in writing signed by himself or his lawful agent." An acceptance as provided by the statute binds the acceptor to pay the bill, and he can not be heard to deny that he has funds in his hands for the purpose. A payment of a bill is more than an acceptance, for the one is an obligation to pay, the other a discharge of the indebtedness represented by such bill. An acceptance is an admission that the drawee has the funds in his hands to pay; a payment is also such an admission and, in addition, a discharge of the debt. If the one concludes the drawee it is inconceivable why the other would not. And it is no defense that the drawees were mistaken in supposing that they would have funds in their hands to pay the bill. A mistake of this kind would not relieve them. Bank

v. Bank, 107 Mo. 402, was a case where the draft was drawn on the plaintiff bank who paid it supposing the signature of the drawer to be genuine while in fact it was a forgery. Plaintiff was denied the right to recover on the ground that the law conclusively presumed that the drawee knew the signature of the drawer. And so it was held in Bank v. Allen, 59 Mo. 310; Stout v. Benoist, 39 Mo. 277; Hoffman v. Bank, 12 Wall. (U. S.) 181; Goetz v. Bank, 119 U. S. 551. The principle of these cases applies to this, as there can be no reason advanced to the contrary.

But respondent insists that law and right will not compel defendant or said commission company to pay the debt as the loss was the result of the negligence of plaintiff. But does the evidence show such negligence? Does the mere fact that plaintiff's agents had a suspicion that Hagan, the drawer of the bill, was not an honest man prove negligence? We think not. The law is that where the bill has passed to the plaintiff without any proof of bad faith in him there is no objection to his title. "Merely putting a party about to purchase negotiable paper upon inquiry is not *per se* sufficient, nor is gross negligence." [Edwards v. Thompson, 66 Mo. 468.] And, "the rule that 'a purchaser is not an innocent holder if there are circumstances connected with the transfer sufficient to put an ordinarily prudent man on inquiry,' is uncertain and devoid of uniformity, and no longer the prevailing law of this State." [Hamilton v. Marks, 63 Mo. 167.] And "mere circumstances sufficient to put a prudent man on inquiry is not sufficient." [Inv. Co. v. Fillingham, 85 Mo. App. 534.] "Ordinarily, one will be charged with notice of a fact who possesses information which puts him upon inquiry, and which, if followed up with diligence, will lead to the ascertainment of truth." But such rule does not apply to negotiable commercial paper. [Jennings v. Todd, 118 Mo. 296.]

Respondent's final contention is that there was no

evidence that plaintiff was the owner and holder of the draft. The evidence shows that plaintiff was the original owner and holder, and it made the following indorsement on the draft: "Pay to any bank or banker or order, all previous indorsements guaranteed." The next indorsement was by the Fourth National Bank of Wichita, Kansas, and was as follows: "Union National Bank of Kansas City, Mo., or order; previous indorsements guaranteed." The latter indorsed it as follows: "Pay order of any bank or banker; all previous indorsements guaranteed," and sent it to defendant who in its answer alleges that it protested the same and returned it to plaintiff. The defendant claims that the said indorsements places the title to the bill in the Union National Bank of Kansas City, therefore plaintiff was not the owner of the bill. An indorsement of a bill for collection is not a transfer of the title of the instrument to the indorsee but merely constitutes him the general agent of the indorser to present the paper and receive payment and remit the proceeds. [Eaton & Gilbert on Com'l Paper, 329.] As a rule, the title of a negotiable instrument passes by an ordinary indorsement, whether special or general. [Idem, 318.] And if the indorsee holds the instrument merely as an agent, the agency may be annulled at the pleasure of the indorser. [Idem 330.] The indorsement of plaintiff "to pay to any bank or banker or order" was not such an indorsement as to pass the title to the bill. It merely authorized any bank or banker into whose hands it might come, to collect and remit the proceeds. In other words, it was only authority to collect: therefore a restrictive and not an unconditional indorsement passing the title. We think this is clear. The title remained in the plaintiff and no subsequent indorsements could affect such title.

The defendant insists that justice is clearly with it. That may be true. But the Supreme Court of this

State in speaking of hardships of particular cases arising under the law governing commercial paper said: "We need not inquire now whether the rule we lay down be the best or not. . . . It may, like all general rules, work occasional hardships, but considerations of convenience and public policy imperatively demand that it be not changed to do what the judge may deem equitable in a given case. The best interests of the commercial world require stability and fixedness in commercial law." We have endeavored to ascertain and apply the general rule of commercial law applicable to this case; with some misgivings, it is true, of the hardship imposed upon defendant which, in ordinary cases, would have strongly appealed to the conscience of the court, and which, but for the rule, perhaps, might have influenced a different result.

The case was tried before a jury. Among others, plaintiff asked the court to instruct the jury to find for the plaintiff, which the court refused. This was error as under all the evidence, there being no conflict in the testimony whatever, the finding should have been for plaintiff.

The cause is reversed with directions to enter judgment for plaintiff for the amount of the draft with interest from date of demand of payment from defendant. All concur.