NATIONAL BANK OF ROLLA, Appellant, v. FIRST NATIONAL BANK OF SALEM, Respondent.

Springfield Court of Appeals, February 7, 1910.

1. **BILLS AND NOTES: Banks and Banking: Recovery of Money Paid on Forged Check by Drawee.** If B, representing himself to be A, presents to C (a bank) a check purporting to be signed by D, payable to A, and drawn on E (a bank), of which bank D is a customer, and C cashes the check and sends it for collection to E, who, when it is presented, pays the same and charges it to D's account; and, at the time of said payment, E has reason to believe that the signature to the check is not D's. *Held*, in the absence of allegations and proofs of negligence on the part of C in cashing the check, that E cannot recover from C the amount of the check, upon learning that D's name is forged.

2. ———: ———: ———: **Negligence of Purchaser Must be Shown.** Leaving out of view the Negotiable Instrument Law of 1905, the great weight of modern cases sustains the theory that the drawee, after payment of a check or bill of exchange, cannot recover from the purchaser without basing his action upon the negligence of the latter.

Bank v. Bank.

3. ———: ———: ———: ———: Negotiable Instrument Law. Under the new Negotiable Instrument Law of 1905, a bank which pays a check purporting to be drawn on it by one of its depositors guarantees the existence of the drawer, the genuineness of his signature and his capacity. and authority to draw the instrument, and where such signature is forged, cannot recover back the amount from the person to whom it was paid, although the position of the parties to such person had not changed in any respect.

4. ———: ———: ———: Endorsements Guaranteed. Where a check is endorsed by a bank, "Endorsement guaranteed, pay any national or State bank or order," and signed by its cashier and sent through other banks to the payee bank, such an endorsement is only for collection and does not transfer title to the endorsee, and the guarantee applies only to the endorsement, and does not protect the drawee against the risk of cashing a check where the maker's name is forged.

5. ———: ———: ———. Where the officer of a drawee bank knew at the time he cashed the check that the signature of the drawer was not genuine, that fact alone will preclude the drawee from recovering the money from the purchaser of the check.

6. ———: ———: Acceptance and Payment. A payment of a bill is more than an acceptance, for the one is an obligation to pay, the other is the discharge of the indebtedness represented by such bill. Where acceptance concludes the drawee, absolute payment has the same effect.

Appeal from Dent Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*Watson & Holmes* for appellants.

(1) "A bank which pays a forged check drawn upon it in the name of a depositor may, if it acts within a reasonable time, recover the amount thereof from the bank which took the check in course of business, and negligently paid the money upon the endorsement of the check by the payee named, without inquiry into its genuineness, or without requiring any identification of the person presenting such check for payment, or

any showing that he was lawfully the holder thereof."
Bank v. Bingham, 30 Wash. 484; Bank v. Bank, 22
Neb. 769; Bank v. Bank, 15 N. Dak. 489; Bank v. Bank,
152 Ill. 296; Espy v. Bank, 18 Wal. (U. S.) 604; Bank
v. Allen, 59 Mo. 311; Morse on Banks and Banking (4
Ed.), 464.   (2) "A party who pays a forged check does
so at his peril; and if by means of his endorsement and
use of the same he thereby obtains money from another,
he is liable for the money so received."   Bank v. Bank,
30 N. E. 7; 51 A. S. R. 221; Ellis v. Insurance Co.,
4 Ohio 682; 64 Am. Dec. 610; Bank v. Franklin, 17
A. S. R. 884; Bank v. Boutelle, 62 N. W. 327; Bank v.
Bank, 36 N. W. 289; Sauvant v. Bank, 63 Tex. 610;
Bank v. Ricker, 71 Ill. 439; 22 A. R. 104; Bowles on
Banks, sec. 189; 2 Parsons on Notes, sec. 80, note 17
A. S. R. 890.

*W. P. Elmer* and *G. C. Dalton* for respondent.

(1)   When the holder of a check procures it to be
accepted or certified, the drawer and all of the endors-
ers are discharged from liability thereon.   Laws of
1905, 264, Mo. Ann. Stat., vol. I, 191, sec. 463; Bank v.
Bank, 107 Mo. 402.   (2) The endorser of negotiable
paper does not warrant to the drawee the genuineness
of the signature of the drawer, but such warranty ex-
tends only to subsequent holders in due course.   When
the drawee passes upon, accepts and pays the check,
it sets at rest all questions as to its genuineness.   Bank
v. Bank, 88 S. W. 939.   (3) The drawee is not a holder
in due course.   He is a guarantor if he accepts or pays
the checks.   Laws 1905, 250, Ann. Stat., vol. I, 531,
sec. 57; Bank v. Bank (Tenn.), 88 S. W. 939; Bank
v. Butler (Tenn.), 83 S. W. 656.   (4) The endorse-
ment on this check, "Pay to any national or State bank
or order," was a restricted endorsement, and was an
endorsement for collection and not a transfer of the
title of the check.   Bank v. Bank, 110 Mo. App. 62;

141 App.—46

Bank v. Bank, 107 Mo. 402. (5) The plaintiff, drawee, was bound to know the handwriting of its customer, the drawer, and if it paid a check into the hands of a *bona fide* holder for value, it is concluded by that act, although the check turns out to be a forgery. Bank v. Bank, 107 Mo. 410; Bank v. Bank (Tenn.), 88 S. W. 939. (6) It is true that money paid by mistake may often be recovered back, but in this case the plaintiff knew that the check was not signed by its customer. The payment was purely voluntary and cannot be recovered back. Savings Assn. v. Kehlor, 7 Mo. App. 158; Teasdale v. Stroller, 133 Mo. 645; Needles v. Burks, 81 Mo. 573; Clowdis v. Railroad, 71 Mo. 510; Heathcock v. Crawford Co., 200 Mo. 177.

GRAY, J.—On September 23, 1907, one Martin L. Chambers, representing himself to be one J. B. Ragan, presented to defendant a check for the sum of $42, purporting to have been drawn on plaintiff in favor of said J. B. Ragan, by one H. W. Lenox, depositor of the plaintiff. The bookkeeper of defendant did not know any of these parties personally, but cashed the check without requiring any identification of Chambers. The defendant then sent the check to its correspondent, the Third National Bank of St. Louis, and through that bank presented the same to plaintiff for payment. When the check was presented to the plaintiff, the cashier thereof, knew that the signature thereto was not the signature of H. W. Lenox, but knowing Ragan and Lenox, and knowing that they dealt a great deal in live stock together, and noticing that the defendant had guaranteed the endorsement thereon to be the endorsement of Ragan, concluded that the check was genuine, and remitted the amount thereof to the Third National Bank of St. Louis, and the same was placed by that bank to the credit of the defendant. Soon after the 1st of October, the plaintiff's cashier sent to Lenox his paid checks for the month of September, in-

cluded among which was this check. Lenox discovered that this check was a forgery, and returned same to plaintiff with notice of that fact, and he was given credit for the amount of this check. The plaintiff then wrote defendant that this check was a forgery, and that inasmuch as plaintiff had honored the same on the strength of defendant's endorsement and guaranty that the endorsement of Ragan was genuine, the defendant should refund the amount of said check to the plaintiff. After several days' delay, defendant notified the plaintiff that the amount of the check would not be refunded, for the reason that it considered it was not liable.

Plaintiff brought this action before a justice of the peace to recover the amount of the check. The plaintiff appealed from the judgment of the justice, and on the 29th day of October, 1908, the cause was tried in the circuit court of Dent county, and judgment was rendered for defendant, and plaintiff appealed to this court.

The plaintiff's petition alleges that both parties, at the dates mentioned in the petition, were banking corporations, and on the 26th day of September, 1907, defendant, through its correspondent, presented to plaintiff for payment, a check for the sum of $42, purporting to be drawn on the plaintiff by one H. W. Lenox, in favor of one J. B. Ragan, and purporting to be endorsed by the said Ragan, and which said check had been duly endorsed by the defendant, and previous endorsements thereon in writing, guaranteed by the defendant, and relying upon the endorsement of said check by the defendant and defendant's said guaranty, and believing that by reason thereof, it was genuine, cashed said check and paid the amount thereof to the defendant; that after it had cashed said check and paid the proceeds to defendant, it discovered that the said check was forged and thereupon it caused due notice to be given to defendant in writing, and demanded of

it the payment of the amount of said check, and that defendant refused to pay the same, and asked for judgment for the amount of $42.

It will be noticed, that no allegation of negligence on the part of the defendant in cashing the check for Ragan, is made in the petition, and the instruction asked by the plaintiff and refused by the court, presented the issue as alleged in the petition. In other words, the question of the negligence of the defendant in cashing the check for Ragan, was not submitted either in the petition or the instruction. There are but two reasons alleged for a reversal of the judgment, and they are: Because the court erred in refusing an instruction asked by the plaintiff; and, because under all the evidence in the case, the judgment should have been for the plaintiff.

The question presented here may be submitted in the following language: If B representing himself to be A, presents to C's bank, a check purporting to be signed by D, payable to A and drawn on E's bank, of which D is a customer, and C's bank cashes the check and sends it for collection to E, who, when it is presented, pays the same and charges it to D's account, and at the time of said payment E has reason to believe that the signature to the check is not D's, can E sue C for the amount of the check, upon learning that D's name was forged to the check, and showing that C had sent the check for collection, and that the money paid by E at the time it cashed the check had been received by C?

The question has been answered in the negative many times in the courts of this country. Since the case of Price v. Neal, 3 Burrows, decided by Lord MANSFIELD in 1762, the general rule has been that when the drawee of a check or bill pays the same to a *bona fide* holder, such drawee cannot recover the money back upon discovering such check or bill to be a forgery. Many of the text writers on negotiable instruments declare that when a bank, upon which a check is drawn,

pays it upon the forged signature of the drawer, the money can be recovered as paid under mistake of fact. [Story on Promissory Notes, secs. 379-529; 2 Parsons on Notes and Bills, 80.] Others, while recognizing a different rule, incline to the opinion that the one just cited is the most equitable. [2 Daniels on Negotiable Instruments, chapter 48, sec. 13.] Whatever the text-writers may think and declare the law to be, a long line of cases sustain the proposition that as between the drawee and the holder of a check, the drawee bank is to be deemed the place of final settlement where all prior mistakes and forgeries can be corrected and settled at once, henceforth and forever more; and if overlooked and payment is made, the chapter is closed and there can be no recovery over. [Price v. Neal, 3 Burrows, 1355; Readington v. Woods, 45 Cal. 406; Bank v. Ricker, 71 Ill. 439; Bank v. Bank, 152 Ill. 296, 30 N. E. 739; Bank v. Bank, 46 N. Y. 77; Ellis v. Trust Co., 4 Ohio 628.]

Judge ALLEN, in Bank v. Bank, 46 N. Y. l. c. 80, states the rule in the following clear language: "For more than a century it has been held and decided, without question, that it is incumbent upon the drawee of the bill, to be satisfied that the signature of the drawer is genuine, that he is presumed to know the handwriting of his correspondent; and if he accepts or pays a bill to which the drawer's name has been forged, he is bound by the act, and can neither repudiate the acceptance nor recover the money paid."

In Price v. Neal, which was a similar action Lord MANSFIELD stopped the counsel for the defendant, saying that it was one of those cases that never could be made plainer by argument; that it was incumbent upon the plaintiff to be satisfied that the bill drawn upon him was the drawer's hand, before he accepted and paid it.

In the case of Ellis v. Trust Co., *supra*, the doctrine as announced in Price v. Neal, is reviewed, ap-

proved, and a long list of authorities cited in support thereof, and among these authorities will be found the case of Bank v. Bank, 107 Mo. 402, 17 S. W. 982. This doctrine is founded by many courts, upon the thought, that the drawee bank is conclusively presumed to know the signatures of its depositors. Upon examination of the authorities, this, however, is too narrow a basis. The courts that declare the rule as above stated, put it upon the theory that the rule is demanded by the necessities of business in these times when the currency of the commercial world is composed so largely of checks and drafts.

There is another line of decisions that state the rule as follows: The drawee of a forged check, who has paid the same, may, upon discovery of the forgery, recover the money paid from the party who received the money, even though the latter was a good faith holder, provided the latter has not been misled or prejudiced by the drawee's failure to detect the forgery, and the burden of showing that he has been misled or prejudiced by the drawee's mistake, rests upon him who claims the right to retain the money. [Bank v. Bank, 108 N. W. 546; s. c. 10 L. R. A. (N. S.) 49.]

In speaking of the doctrine declared in Price v. Neal, and other cases above cited, Judge Engerud, who wrote the opinion in First National Bank v. Bank of Wyndmere, said: "This doctrine is fast fading into the misty past where it belongs. It is almost dead, the funeral notices are ready, and no tears will be shed, for it was founded in misconception of the fundamental principles of law and common sense. Most of the courts now agree that one who purchases a check or draft is bound to satisfy himself that the paper is genuine; and that, by endorsing it, or presenting it for payment, or putting it into circulation before presentation, he impliedly asserts that he has performed this duty." And in support of his position, cites a number of late cases, and finally concludes that the great weight of authority

is between the two propositions; that is, that notwithstanding the drawee has accepted the check and paid it, yet if it is afterwards discovered to be a forgery and the purchaser of the check took it from a stranger, without making proper inquiry as to his identity, that the drawee can recover from the purchaser the amount of the check.

The courts adopting the theory that the drawee can recover where it is shown that the purchaser of the check was guilty of negligence in taking the same, are numerous, and among them are the following: Bank v. Bank, 151 Mass. 280; Ford v. Bank, 74 S. C. 180, 54 S. E. 204; Bank v. Bingham, 71 Pac. 43, 60 L. R. A. 955; Bank v. Bank, 36 N. W. 289.

The latter doctrine is well stated in Ford v. Bank, as follows: "We think the true rule is found stated in the case of Bank v. Bangs, 106 Mass. 441, and Bank v. Bank, 151 Mass. 280, 24 N. E. 44. The language of the court in the last-cited case, after stating that the presumption is that the drawee bank knows the signatures of his own customers, is as follows: 'This presumption is conclusive only when the party receiving the money has in no way contributed to the success of the fraud or the mistake of fact under which the payment has been made. In the absence of actual fault on the part of the drawee, his constructive fault in not knowing the signature of the drawer and detecting the forgery will not preclude his recovery from one who took the check under circumstances of suspicion without proper precaution, or whose conduct has been such as to mislead the drawee, or induce him to pay the check without the usual inquiry against fraud. Where a loss which must be borne by one of two parties alike innocent of the forgery can be traced to the neglect or fault of either, it is reasonable that it should be borne by him, even if innocent of any intentional fraud through whose means it has succeeded.'"

The different doctrines are well stated by the dif-

ferent opinions of the judges of the Supreme Court of Minnesota, in the case of Bank v. Boutell, 62 N. W. 327, and for further information upon these points, reference is made to that case. In nearly all of the authorities where opinions are cited to sustain the different theories, the case of Bank v. Bank, 107 Mo. 402, 17 S. W. 982, is cited in support of the doctrine, that it is the absolute duty of the payee to ascertain at his peril when a check is presented for payment, purporting to be drawn by a customer of his bank, whether or not it is the genuine signature of the customer, and if he cashes the check, all rights against any person except the forgerer are forever barred. But upon reading the case of Bank v. Bank, 107 Mo., *supra*, it will be found that the question of negligence on the part of the purchaser of the check is made a material issue in the case.

In addition to what we have said, attention is called to the cases of Bank v. Bank, 108 N. W., *supra*, as found in 10 L. R. A., N. S., 63.

In Bank v. Bank, 109 Mo. App. 665, 83 S. W. 537, the Kansas City Court of Appeals, in an opinion by Judge BROADDUS, declares the rule to be, that when the drawee pays a check purporting to be drawn upon its bank by one of its customers, that its right of action against any other parties to the check is gone, unless it can be shown that the purchaser was guilty of gross negligence, and that a purchaser is not guilty of such negligence as to authorize a recovery against him from the fact that he has knowledge of circumstances sufficient to put a prudent man on inquiry. This authority goes much further in regard to the notice necessary to make the purchaser guilty of negligence than most any other case recognizing the negligence doctrine.

From a review of these authorities, we are satisfied that leaving out of view our Negotiable Instrument Act of 1905, the great weight of the modern cases sustains the theory that the drawee cannot recover from the purchaser without basing his action upon the neg-

ligence of the latter. In Bank v. Boutell, *supra*, the demurrer to the petition was sustained because there was no allegation of negligence on the part of the defendant. Also, in Ford v. Bank, *supra*, demurrer was filed to the petition and sustained by the court because the petition did not allege any negligence of the defendant.

Under the allegations of the petition in this case, the defendant was not liable. [Stout v. Benoist, 39 Mo. 277.] In that case the court said: "The acceptor of a forged bill is bound to know the handwriting of the drawer; and if he has accepted and paid the bill to a holder *bona fide* and for a valuable consideration, he cannot recover back the money. Where persons are equally innocent, and one is bound to know and act upon his knowledge, and the other has no means of knowledge, it would be unjust to burden the latter with a loss for the purpose of exonerating the former."

The court did not err in refusing the plaintiff's instruction, as it also left out the question of negligence on the part of the defendant.

In addition to the authorities, the Negotiable Instrument Act of 1905 contains the following sections:

"Section 62. The acceptor, by accepting the instrument engages that he will pay it according to the tenor of its acceptance; and admits: The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and the existence of the payee and his capacity to endorse.

"Section 188. Where the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liability thereon."

Judge BROADDUS in Bank v. Bank, 109 Mo. App., *supra*, in answer to the argument that absolute payment was not an acceptance, said: "An acceptance binds the acceptor to pay the bill, and he cannot be heard to deny that he has funds in his hands for the purpose. A payment of the bill is more than an accept-

ance, for the one is an obligation to pay, the other a discharge of the indebtedness represented by such bill. If the one concludes the drawee it is inconceivable why the other would not."

We fully concur in the views of Judge BROADDUS, as quoted above. If a mere promise to pay a check is binding on the bank, why should the absolute payment of the check not have the same effect?

The adoption in this and other States of our Negotiable Instrument Law was for the purpose of having in the statutory laws of the States a uniform law in regard to commercial paper. A confusion was known to exist on many of the everyday transactions concerning such paper, and it may be said that there was no question upon which the courts were more in conflict than upon the question involved in this case. After a careful examination of the new law, we are inclined to believe that it was intended to adopt the law as declared in Price v. Neal, *supra*. In support of our views, we are sustained by the late case of Title Guarantee & Trust Co. v. Haven, 111 N. Y. S. 305, wherein the court, in construing section 62 of our Negotiable Instrument Act, said: "A bank which pays a check purporting to be drawn on it by one of its depositors, guarantees the existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument, and, where such signature is forged, cannot recover back the amount from the person to whom it was paid, although the position of the parties to such person has not changed in any respect."

The appellant, however, contends that because the check was endorsed: "Endorsement guaranteed. Pay any national or State bank or order. The First National Bank of Salem. W. J. Bennett, Cashier," that it had the right to rely upon this guaranty, and that its suit is maintained thereon. Such an endorsement is only an endorsement for collection, and does not transfer the title to the indorsee. [Bank v. Bank, 109

Mo. App. 673, 83 S. W. 537.]   And the guaranty only applies to the indorsers and does not protect the payee against the risk of cashing a check to which the maker's name is forged.   [See authorities cited on other points in this opinion.]

There is another element in plaintiff's case disclosed by the evidence, which under all the authorities, precludes its right to recover in this case.   It stands admitted that when the check was presented, the officer of plaintiff who paid the same, knew that the signature was not that of the bank's customer.   With this knowledge, the plaintiff could not cash the check and hold the defendant for money received thereon.

After a thorough examination of the law as it existed prior to our Negotiable Instrument Act, and as changed by that act, we are satisfied that the court committed no error in refusing plaintiff's instruction, and that upon the allegations of the petition, the plaintiff was not entitled to recover, and the judgment of the trial court will be affirmed.   All concur.