* Indorsement, "To the order of any bank or banker," as a restrictive indorsement, see note in 10 A.L.R., 709.
The only question presented to us herein is the liability of certain indorsers upon a promissory note. The chancellor decreed against these indorsers in favor of the holder. The court of appeals reversed the decree of the chancellor in this particular, and the case is before us upon the holder's petition forcertiorari, heretofore granted.
On December 9, 1919, W.H. Underwood purchased a tract of land in Giles county, and in payment for same executed his four notes of that date payable, respectively, on January 1, 1921, January 1, 1922, January 1, 1923, and January 1, 1924, for $462.50 each. Lien was retained to secure the payment of these notes. The note in suit was the second of this series, payable to the order of E.B. Parker January 1, 1922.
On January 7, 1921, E.B. Parker transferred this note to his mother, Mrs. L.M. Harwell.
Parker and Mrs. Harwell resided in Pulaski, and Underwood, the maker of the notes, resided near Lynnville.
During the summer of 1921 the complainant Sands, who also resided in the Lynnville community and was a friend of Underwood, told Underwood that he had some money he wished to invest. Underwood called the attention of Sands to the notes above mentioned, and Sands authorized Underwood to say to Parker that he (Sands) would purchase one of the notes. About thirty days after this conversation, Underwood told Sands one of the notes would *Page 667 
be sent to the Bank of Lynnville. Thereupon Sands went to the Bank of Lynnville, found the note there, and bought it, paying to the bank the face of the note and accrued interest.
It seems that instead of writing to Parker that Sands or any one else wished to buy a note, Underwood wrote to Parker that if the latter would send one of the notes to the Bank of Lynnville it would be paid. As stated above, Parker had previously transferred the note in question to his mother, and it was in the Citizens' Bank of Pulaski for safekeeping. Parker instructed the Citzens' Bank of Pulaski to send the note to the Bank of Lynnville for collection. Mrs. Harwell had not indorsed the note, and an officer of the Citizens' Bank of Pulaski wrote her name on the back of it. No question is made about this. The same officer of the Citizens' Bank of Pulaski then indorsed the note with a stamp bearing the name of the cashier of that bank, and forwarded the note to the Bank of Lynnville, with a memorandum attached thereto, containing no definite instructions.
In the face of this note, demand, notice and protest were waived by each party thereto.
The note reached the Bank of Lynnville the latter part of July, about five months before if fell due. It bore the following indorsements:
"For value received I transfer all my right, title and interest in this note to Mrs. L.M. Harwell, waiving demand, notice and protest. This January 7, 1921.
"E.B. PARKER."
"Mrs. L.M. Harwell."
"Pay to the order of any bank, banker or trust company. *Page 668 
All prior indorsements guaranteed. July 26, 1921. 87-134. Pulaski, Tennessee. 87-134.
"W.L. ABERNATHY, Cashier."
The cashier of the Bank of Lynnville testified that before the note arrived Underwood had told him it would be sent there for Sands to "take up." He further said that Sands "represented to me, or I understood he bought the note from Parker, and it was sent to us to facilitate the transaction." "I just received it as carrying out the trade that Underwood represented to me he (Sands) and Parker had. I was acting as a go-between between them. He had bought the note from Parker."
It is true that the cashier of the Bank of Lynnville testified that he considered the Pulaski bank's indorsement to be one for collection and that he did not consider that his bank was authorized to pass title to the note.
Whatever he may have thought at the time his deposition was taken about the matter, the fact is that the cashier of the Bank of Lynnville did undertake to pass title to this note to Sands, for he indorsed it:
"Transferred to Joe Sands without recourse either in law or equity. July 30, 1921. Bank of Lynnville, by George B. Witt, Cashier."
Transferring without recourse only clears the particular indorser making such indorsement, not previous indorsers.Murray v. Nelson, 145 Tenn. 459, 239 S.W. 764, 21 A.L.R., 1392.
There is nothing in the evidence of the cashier of the Bank of Lynnville to indicate that Sands did not suppose he was buying the note, nor anything to indicate that Sands knew the note was sent on for collection rather than negotiation. Sands himself testified that he had no *Page 669 
knowledge of what passed between Underwood and Parker before the note was sent to Lynnville.
Under the circumstances detailed, we think that Sands must be regarded as an innocent purchaser of this note for value and without notice. Reference has been made in the case to circumstances which it is insisted should have put Sands upon inquiry, and it is argued that such inquiry would have disclosed the fact that the note had been sent to the Bank of Lynnville for collection only. It was not incumbent upon Sands, however, to make such inquiry.
To deprive one purchasing a note of the status of a holder in due course, he must have "actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." Section 56, chapter 94, Acts of 1899, Negotiable Instruments Act.
The old rule of constructive or implied notice was abolished by the Negotiable Instruments Act. Whether one is a holder in due course is tested by his honesty and good faith in the purchase of a negotiable instrument and not by a speculative issue as to his diligence or negligence. One can only be deprived of the rights of a holder in due course by proof of actual notice of a defect in the instrument or by proof of circumstances indicating bad faith. Starkey Allison v. Nixon, 151 Tenn. 637, 270 S.W. 980; Corinth Bank Trust Co. v. Security Nat. Bank,148 Tenn. 136, 252 S.W. 1001; Bank v. Butler, 113 Tenn. 574, 83 S.W. 655.
No matter what instructions were given by Parker to the Pulaski bank, no matter what instructions were given by that bank to the Lynnville bank, even if the sale of the *Page 670 
note by the Lynnville bank to Sands be held a breach of trust, Sands nevertheless acquired good title unless he took the note with actual knowledge of such breach of trust, or with knowledge of such facts that his action amounted to bad faith.
We see no bad faith on the part of Sands and no evidence of actual knowledge, unless the indorsement placed on his note by the Pulaski bank be treated as a restrictive indorsement, and this is the determinative question in the case.
The Negotiable Instruments Act, chapter 94 of the Acts of 1899, provides as follows:
"An indorsement is restrictive which either:
"1. Prohibits the further negotiation of the instrument; or,
"2. Constitutes the indorsee the agent of the indorser; or,
"3. Vests the title in the indorsee in trust for, or to the use of some other person.
"But the mere absence of words implying power to negotiate does not make an indorsement restrictive." Section 36.
"A restrictive indorsement confers upon the indorsee the right:
"1. To receive payment of the instrument;
"2. To bring any action thereon that the indorser could bring;
"3. To transfer his rights as such indorsee, where the form of the indorsement authorizes him to do so.
"But all subsequent indorsees acquire only the title of the first indorsee under the restrictive indorsement." Section 37. *Page 671 
There is nothing in the indorsement, "Pay to the order of any bank, banker or trust company," which appears to prohibit further negotiation, or to constitute the indorsee a bare agent for the indorser or to vest the title in the indorsee in trust. Generally the word "order" is a badge of negotiability. Id., section 1. Under the statute "the mere absence of words implying power to negotiate" does not justify an implication that the indorsement is restricted.
We do not see why such an indorsement should be construed to limit the indorsee's authority merely to the power to collect. A fair interpretation of the language employed does not justify such a conclusion.
No banking custom prevails in this jurisdiction which would so limit the effect of the indorsement under consideration. It is true that this particular indorsement is commonly used by banks upon paper forwarded for collection, but it is also quite commonly used by banks upon paper rediscounted with other banks where certainly the intent is to transfer title.
It has been said that the adoption of this particular form of indorsement, now in general use by the banks of the country, was to escape the consequences incident to restrictive indorsements such as "for collection," "for deposit," "for account." FirstNational Bank v. First National Bank, 58 Ohio St. 207, 50 N.E. 723, 41 L.R.A., 584, 65 Am. St. Rep., 748.
In National Bank of Commerce v. Bossemeyer, 101 Neb. 96, 162 N.W. 503, L.R.A., 1917E, 374, the supreme court of Nebraska considered an indorsement like the one before us and said: *Page 672 
"Is the indorsement restrictive? Whatever may have been held before the enactment of the Negotiable Instrumnts Act, it is clear that this question must be determined by the provisions of that statute. . . . There is nothing on the face of this indorsement which prohibits the further negotiation of the instrument or constitutes the indorsee the agent of the indorser, or vests title in the indorsee in trust for the use of some other person, and hence, by the most elementary principles of statutory construction, the plain meaning of the language must be observed, and it must be held that the indorsement was not restrictive."
To the same effect is Interstate Trust Co. et al. v. UnitedStates Nat. Bank, 67 Colo. 6, 185 P. 260, 10 A.L.R., 705.
We are referred to Johnston v. Schnabaum, 86 Ark., 82, 109 S.W. 1163, 17 L.R.A. (N.S.), 838, 15 Ann. Cas., 876; Bank ofIndian Territory v. First National Bank, 109 Mo. App. 665, 83 S.W. 537; National Bank v. First National Bank, 141 Mo. App. 719, 125 S.W. 513; Citizens' Trust Co. v. Ward, 195 Mo. App. 223, 190 S.W. 364; and Gregory v. Sturgis NationalBank (Tex. Civ. App.), 71 S.W. 66, as reaching a contrary conclusion. As pointed out by the editor of a note 10 A.L.R., 709, much of the language used in Johnston v. Schnabaum,
supra, indicates that the Arkansas court did not regard this indorsement as restrictive. In National Bank of Commerce v.Bossemeyer, supra, the court says of the Missouri cases that the first one was decided before the Negotiable Instruments Act went into effect in that State. The cases decided after the statute in Missouri were *Page 673 
rested on the authority of the first one without consideration of the language of the statute.
Proof as to what the Pulaski bank meant by the indorsement used, and what the Lynnville bank understood such indorsement to mean, is wholly irrelevant in this case. It is uniformly held that the title of a purchaser in good faith and for value before maturity cannot be affected by parol proof that an unrestricted indorsement was made for purposes of collection only. Coors v.German National Bank, 14 Colo. 202, 23 P. 328, 7 L.R.A., 845;Meador v. Dollar Savings Bank, 56 Ga. 605; Goodwin v.Davenport, 47 Me. 112, 74 Am. Dec., 478; Hamburger v.Miller, 48 Md. 325; Bradford v. Williams, 91 N.C. 7. See notes, 15 Ann. Cas., 877, 17 L.R.A. (N.S.), 838, 840.
Parol proof varying the contract apparently assumed by an indorser is restricted to a controversy between such indorser and his immediate indorsee. Bank v. Busby, 120 Tenn. 652, 113 S.W. 390. See First National Bank v. Barbee, 150 Tenn. 355, 265 S.W. 371.
It results that the decree of the court of appeals must be reversed and a decree entered here in favor of the complainant against Parker and Mrs. Harwell. Complainant is asserting no rights against the Citizens' Bank of Pulaski in this court. Parker and Mrs. Harwell filed a cross-bill to recover from the Bank of Lynnville in the event they were held liable to Sands and they were granted such a recovery by the chancellor. The court of appeals reversed the chancellor in this respect, and there is no petition for certiorari to review this action of that court. *Page 674 
Pending this litigation the land purchased by Underwood from Parker has been sold for the satisfaction of the lien notes, and the proceeds of the sale are in the court below. The land did not bring enough to pay the amount due on the notes. The case will be remanded to the end that Sands have his share of the proceeds of the sale of the land applied as a credit on his judgment against Parker and Mrs. Harwell.
Costs below will remain as taxed by the chancellor. Costs of the appellate courts will be paid by Parker and Mrs. Harwell. *Page 675