# MARCH, 1929.

UNION STATE BANK, RESPONDENT, v. HIBERNIA BANK & TRUST COMPANY, APPELLANT.

Kansas City Court of Appeals. May 20, 1929.

*Daniel V. Howell* for respondent.

*Wm. Bush* and *Hugh M. Miller* for appellant.

ARNOLD, J.—This is an action by attachment to recover on a dishonored cashier's check, or draft. Plaintiff is a banking corporation, under the laws of Missouri, engaged in the banking business at Kansas City and defendant is a banking corporation engaged in the same business at New Orleans, Louisiana.

The record discloses there was filed in the court of a justice of the peace in Kaw Township, Jackson county, Missouri, a formal statement of claim, charging that on February 1, 1925, Coughlin & Company drew its draft on one C. Friedman of Natchez, Louisiana, through the Peoples Bank of Natchitoches, Louisiana, payable to the order of the Union State Bank of Kansas City, Missouri, on·the arrival of a car of hay described in a bill of lading of the Missouri, Kansas & Texas Railroad, attached to said draft, the draft being for the sum of $211.45; that the Union State Bank, on February 2, 1925, for valuable consideration, purchased said draft from Coughlin & Company and forwarded same to the Peoples Bank at Natchitoches, Louisiana, which bank, on March 10, 1925, accepted same, stamped it paid and issued in payment thereof its cashier's check dated March 10, 1925, drawn upon the Hibernia Bank & Trust Company at New Orleans, Louisiana, in the sum of $211.45, payable to the order of the Union State Bank; that upon receipt of said cashier's check, the Union State Bank forwarded same through the Commerce Trust Company of Kansas City, Missouri, to the Hibernia Bank & Trust Company, for payment; that said last named bank, on March 16, 1925, accepted said cashier's check, but refused and still refuses to remit to the Union State Bank in the usual and ordinary manner the proceeds thereof.

To this petition and claim defendant filed an answer and counterclaim, consisting of a general denial; and for affirmative defense, alleged that upon receipt of the check in question, defendant had in its possession a stop payment order against the check from the drawer thereof and had no authority to make payment thereon, and all acts and things done by defendant in stamping said check paid were had and done by mistake and oversight on the part of its employees; that plaintiff received the said check through mistake of the cashier of the drawer who misunderstood a telephone conversation from the drawee of a draft which it held for collection, said cashier executing and forwarding said check to the plaintiff through mistake and error, and that plaintiff was notified by telegram immediately on the discovery of the mistake, and retained said check and fraudulently presented same for payment; that said check was obtained without consideration, and if defendant, as alleged in plaintiff's petition, ever accepted or paid said check, defendant is subrogated to the claim and demand of the drawer of said check and plaintiff is indebted to defendant for money had and received to the use of the

defendant, to the amount of the said check, and that said indebtedness offsets any claim and demand of the plaintiff. Defendant further states that under the laws of Louisiana, any payment or delivery of property made through mistake and error can be recovered and the negligence of the person making such·payment is no defense, and that said check, as alleged in the petition, was issued, executed and delivered and made payable in the State of Louisiana.

Accompanying the transcript of the justice of the peace on appeal to the circuit court was an affidavit and bond in attachment showing service on the Commerce Trust Company, as garnishee, answer of the garnishee, and affidavit for appeal filed by defendant, notice of appeal and appeal bond, duly approved. Upon the pleadings shown in the transcript of the justice of the peace, by agreement, the cause was tried to the court without the aid of a jury. There was no motion or other pleading filed in the circuit court attacking the sufficiency of either the petition or answer. The court found the issues for the plaintiff on its petition and against defendant on its counterclaim and judgment for plaintiff for $211.45 was entered accordingly. It was further ordered that the attachment be sustained as to defendant and that the garnishee, the Commerce Trust Company, pay to the clerk of the court the sum of $211.45, as per order of the court. Defendant filed its timely motion for a new trial which was overruled. No motion in arrest of judgment was filed. No demurrer was offered by defendant at the close of plaintiff's case, nor at the close of all the evidence. No request was made for a finding of facts or declarations of law, and the court made none.

Plaintiff introduced in evidence the cashier's check for $211.45, drawn by the cashier of the Peoples Bank of Natchitoches, Louisiana, upon the Hibernia Bank & Trust Company of New Orleans, Louisiana, payable to the order of plaintiff herein. The check bore upon its back the indorsement of plaintiff, the indorsement of the Commerce Trust Company and the "Paid" stamp of the Hibernia Bank & Trust Company, drawee, under date of March 16, 1925, over which was an imprint of a stamp reading "Cancelled" placed there by the last named bank in an attempt to cancel the "Paid" stamp thereon. It was admitted plaintiff was the owner and holder of said check, or draft, at the time it was sent to the Hibernia Bank & Trust Company; that the drawee bank had not remitted the amount of the same to the payee, and that the stamp carrying the word "Cancelled" was placed thereon after the check had been stamped "Paid." Plaintiff also introduced in evidence a ledger sheet taken from the books of defendant bank, containing the account of the Peoples Bank with defendant bank, showing that on March 16, 1925, defend-

ant bank charged to Peoples Bank the amount of said draft or check for $211.45. No other evidence was introduced by plaintiff.

Defendant introduced testimony tending to show that the draft in question was received by it by letter from the Commerce Trust Company on March 16, 1925; that the teller stamped it paid on that date and credited the Commerce Trust Company with the amount thereof; that the draft was returned to the teller by the bookkeeper on March 17th, and on that day was charged back to the Commerce Trust Company; that the bookkeeper received the draft in due course on March 16th, and charged it to the account of the Peoples Bank on that date; that he first saw the stop payment order on March 17th; that about 1:00 P. M. he credited the Peoples Bank with the amount of the draft; that he knew nothing of the stop payment order on the 16th. One of defendant's employees testified a stop payment order was received from the Peoples Bank in code telegram on March 16th; that she decoded the telegram and gave it to a messenger boy to deliver to a Mr. Tutt of the bank. This stop payment telegram next was found in the hands of another employee of the bank named Booksh who testified she received it on the 16th, but from whom she did not recall; that on that date she called the bookkeeper Pattin and asked him if the draft had cleared. Another bookkeeper named Reilly testified he saw the stop payment order on the 16th, and that he talked to the bookkeeper Pattin about the matter on that date. The stop payment order is in evidence and as translated reads:

"Please stop payment on check drawn on you by the undersigned, No. 108446, dated _____ issued to _____, for $211.45, for the following reasons:

_____ and the undersigned hereby agrees to hold you harmless for said amount together with all expenses and costs, including attorney's fee, if any, incurred by you on account of your refusing payment of said check; and agrees further not to hold you liable on account of payment contrary to this request, if same occur through inadvertence or accident only."

There are four assignments of error: (1) The judgment is against the law and the evidence; (2) under the evidence plaintiff is not entitled to recover; (3) the court erred in holding a drawee bank cannot recover money paid by mistake over a stop payment order where the person receiving the funds has actual knowledge that the order to pay has been revoked by a stop payment order; (4) in holding the drawee bank cannot correct a mistake in overlooking a stop payment order and charging negotiable paper it holds for collection to the account of the drawer, where the mistake is discovered and corrected before payment is remitted. The only point briefed, and apparently the only one relied on by defendant, is that a bank can recover a payment of paper drawn upon it which was paid by mis-

take, where the person receiving the funds had knowledge of the facts affecting the validity of the paper at the time the payment was received.

It seems proper at this point to recapitulate briefly the acts leading up to this controversy. On February 1, 1925, Coughlin & Company drew its draft with bill of lading attached on C. Friedman, through the Peoples Bank at Natchitoches, Louisiana, payable to the order of the Union State Bank of Kansas City, Missouri, which last named bank on February 25, 1925, forwarded said draft to the Peoples Bank by which it was accepted on March 10, 1925, and stamped "Paid" and on the same date, said Peoples Bank issued in payment thereof its cashier's check, or draft, on the Hibernia Bank of New Orleans, Louisiana, payable to the order of the Union State Bank. Upon receipt of said draft, the last named bank forwarded same through the Commerce Trust Company to the Hibernia Bank for payment. The Hibernia Bank received said draft on March 16, 1925, stamped it "Paid" but refused to remit the amount thereof through the regular channels.

The original draft by Coughlin & Company against Friedman was received by the Peoples Bank from the Union State Bank for collection and remittance. On February 25, 1925, said draft was returned by the Peoples Bank to the Union State Bank, unpaid. The latter bank, on February 27th, again sent the draft to the Peoples Bank and it was immediately returned. On March 10, 1925, after a telephone conversation with the Friedman Estate in which the cashier of the Peoples Bank misunderstood he was to pay the draft, a draft was issued on the Hibernia Bank and sent to the Union State Bank, in payment of the original draft. The following morning, March 11th, the cashier was informed by the Friedman Estate by telephone that they had not intended to pay the Coughlin draft. On that day, at about 9:30 A. M., the cashier wired the Union State Bank, as follows:

"Your number 6534, February 27th, remitted in error we hold draft and bill of lading do not cash draft payment has been stopped."

This telegram was followed by a letter of date March 11, to the Union State Bank stating the remittance had been made in error and the draft should have been returned unpaid. The draft and bill of lading were enclosed and return of the draft was again requested. On March 13, 1925, the Union State Bank wrote the Peoples Bank acknowledging receipt of the draft, stating a telegram and letter later had been received and payment on the draft stopped, and—

"We are very sorry, but we will ask that you pay the draft, as we are out the money for settlement with Coughlin & Co. . . ."

The sight draft with bill of lading attached were enclosed with the statement that they were clearing draft on the Hibernia Bank. On March 18th, the Peoples Bank wrote the Union State Bank it was again returning the Coughlin draft and bill of lading, saying:

"It would have been impossible for you to have received our draft before the telegram and we can see no reason or excuse for you clearing the draft after having received the telegram. Payment on the draft has been stopped and it will not be paid if presented."

And on March 21st, the Union State Bank wrote the Peoples Bank, as follows:

"Your draft No. 108446 for $211.45 on the Hibernia Bank and Trust Company, New Orleans, Louisiana, has been returned to us today unpaid, with protest fees of $3.50 added. The proceeds of this shipment of hay is the property of this bank and we have returned from you our sight draft distinctly perforated paid 3-10-25. We insist that this amount is due this bank and we intend to take legal steps to collect same. Our legal advice is that it is collectible. We, however, do not desire any suits and we presume that you do not desire to pay any additional costs. We, therefore, suggest that you remit to us $211.45 plus $3.50 protest fees. We enclose herewith bill of lading."

The Peoples Bank replied to this letter denying liability and again returning the bill of lading. On May 15, 1925, the following letter was addressed to the Peoples Bank by the vice-president and cashier of the Hibernia Bank:

"As per our telephone conversation today, you will please find enclosed a letter from the Law Department of the Commerce Trust Company, Kansas City, Mo., dated May 12, 1925, advising that they had been served with a summons of garnishment in a case entitled 'Union State Bank versus Hibernia Bank & Trust Company' and that it is returnable May 27, 1925.

"They further advise that the suit is by attachment, that the amount of the plaintiff's claim is $211.45, and that the suit seems to be based on a draft drawn by the Peoples Bank of Natchitoches, La., on the Hibernia Bank & Trust Company, payable to the order of the Union State Bank, Kansas City, Mo., which the said Union State Bank alleges was accepted by us, but never paid, and that the attorney for the plaintiff is Daniel V. Howell, with offices at 1115 Commerce Bldg., Kansas City, Mo.

"We understand that you are going to turn this letter over to your attorney and give the matter the necessary attention.

"Wishing the said letter safe to hand, and regretting the annoyance, we remain,

"Yours very truly,
"W. B. MACHADO,
"Vice-President and Cashier."

There is evidence tending to show that when the draft on the Hibernia Bank was received the same was accepted and stamped "paid" and before remittance of the proceeds thereof, the stop payment order was discovered, the "paid" stamp cancelled and remittance withheld. It is defendant's position that the acceptance of the draft by the Hibernia Bank was by mistake and that plaintiff cannot recover.

The testimony shows that the Hibernia Bank, on receipt of the draft in question, stamped it "paid" and charged the amount thereof to the Peoples Bank, and on discovery of the stop payment order, credited the amount to the Peoples Bank. The point then hinges on the question as to whether the Hibernia Bank accepted the draft. Section 975, Revised Statutes 1919, provides that the drawer of a bill of exchange is liable to the holder upon acceptance; and section 848 provides:

"The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance, and admits: (1) The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument; and (2) the existence of the payee and his capacity to indorse."

An acceptance binds the acceptor to pay the bill of exchange. This rule was discussed in Bank v. Bank, 109 Mo. App. 665, 83 S. W. 537; Nat'l Bank of Commerce v. Bank, 148 Mo. App. 1, 127 S. W. 429; Albers v. Bank, 85 Mo. 173. It is suggested it may be that the acceptor bank can erase the acceptance as a conditional one before it is charged to the drawer. But under the ruling in the Albers case and the other cases just cited, the rule does not apply where the bill was accepted by crediting the Commerce Trust Company with the draft, and charging the amount to the drawer. Certainly the testimony here presented was of sufficient substantiality for the court, sitting as a jury, to find there was an acceptance of the draft by defendant bank.

Defendant seems to contend we may review the facts and render such judgment as we think proper. This being a law and not an equity case, we are bound by the ruling of the trial court sitting as a jury if there is substantial evidence to sustain such ruling. The Supreme Court has held that where the court tries issues of fact, sits as a jury and gives a general verdict, as here, the judgment will not be disturbed if there is substantial evidence in the record to support it. [Jordan v. Davis, 172 Mo. 599, 72 S. W. 686; Cochran v. Thomas, 131 Mo. 258, 33 S. W. 6.]

Under the evidence presented, the court might have found (1) that the stop payment order was not received by the Hibernia Bank; (2) that such an order was not decoded until after the draft was cleared; (3) that it reached the Hibernia Bank after it had paid

382

the draft; and (4) that the Hibernia Bank was negligent. Under the law and the evidence, the court could have held that when defendant charged the amount of the draft to the Peoples Bank, the transaction was closed and plaintiff entitled to the amount involved. If the court found, as it evidently did find, these points in plaintiff's favor, the judgment must be upheld. Defendant cites the case of Jones v. Bank, 144 Mo. App. 428, 128 S. W. 829, which deals with a forged indorsement. There is no question of a forged instrument here and the case is not in point. For reasons above stated the judgment is affirmed. *Bland, J.*, concurs; *Trimble, P. J.*, absent.